TWIN CITY FIRE INSURANCE COMPANY *et al.*, Plaintiffs-Appellees, v. OLD WORLD TRADING COMPANY, Defendant-Appellant (BASF Corporation, Defendant).

First District (1st Division)   No. 1—91—1373

Opinion filed December 30, 1993.—Rehearing denied September 12, 1994.

Freeborn & Peters, of Chicago (David H. Kistenbroker and James G. Mc-Connell, of counsel), and McNally, Maloney & Peterson, of Milwaukee, Wisconsin (John F. Maloney and Daniel M. Leep, of counsel), for appellant.

Johnson & Bell, Ltd. (Thomas H. Fegan, of counsel), and Hinshaw & Cul-

bertson (Stephen R. Swofford and Kathleen A. McQueeny, of counsel), both of Chicago, for appellees.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

This appeal arises from the circuit court's entry of summary judgment in favor of plaintiffs-appellees, Twin City Fire Insurance Company (hereafter Twin City) and California Union Insurance Company (hereafter California Union), on their consolidated declaratory judgment actions against the Old World Trading Company (hereafter defendant or Old World). In a declaratory judgment action, plaintiffs sought a determination as to whether they had a duty, as excess carriers, to defend or indemnify their insured, Old World, in an underlying Federal lawsuit involving BASF Corporation (not a party to this appeal) and Old World.

BASF filed an unfair competition action in the United States District Court against Old World on July 30, 1986, and served summons on August 4, 1986. Initially, BASF was seeking compensatory damages in the amount of $500,000, punitive and exemplary damages of not less than $500,000, and an unspecified amount of attorney fees. BASF sought damages against Old World arising from Old World's alleged violations of 15 U.S.C. § 1125(a) (1988), and the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1992)), resulting in unfair competition. BASF alleged that Old World made improper advertising claims in 1983 through 1986 which caused damage to BASF's antifreeze business. In late 1987 BASF and Old World agreed to the terms of a stipulation with regard to the issues existing between them for injunctive relief. By order of the court, BASF was held bound by the stipulation on November 18, 1987. In this stipulation, Old World admitted that one of its products did not meet the performance specifications as advertised by Old World. The stipulation included the following:

"(a) No dynamometer or fleet testing required by the Ford Specification was even performed by Dearborn or Old World or to the knowledge of Old World, by any other person, on the antifreeze/summer coolant products sold by Old World using Dearborn inhibitor additive package since May, 1982.

(b) As a result of not performing the dyanometer [*sic*] and fleet test referred to in subparagraph (a) above, the antifreeze/summer coolant sold by Old World using the Dearborn inhibitor additive package did not meet or exceed the Ford Specification."

On April 19, 1989, F.P. McLaughlin, a senior vice-president for Old World, wrote the following letter:

"Mr. Dan Pancake
Vice Chairman
Affiliated Insurance Consultants
1023 Burlington Avenue
Western Springs, Il 60558-0549

Dear Dan:

As a result of some recent conversations we have had regarding Product Liability Insurance, I find that there may be a legal matter in which we are involved which would more properly be covered by our Comprehensive General Liability and Umbrella carriers.

In September, 1986, The Old World Trading Company, Inc. was sued by BASF. BASF alleged that Old World had made improper advertising claims in 1983-1986 which had caused damage to BASF's antifreeze business. I have enclosed a copy of their complaint.

Based upon our recent discussions and after reviewing a number of our past insurance policies, I believe that you should contact our comprehensive general liability carriers for 1983 and 1984 in order to put them on notice about this matter. We specifically request that you tender the defense of this matter to the appropriate carriers at this time.

We have been aggressively defending our interest in this matter since the time the suit was filed. We have incurred substantial legal fees regarding this matter. I believe the insurance carriers for our CGL and Umbrella should get together and discuss further defense issues with our attorney; Mr. John Maloney at the firm of McNally, Maloney & Peterson, 2600 North Mayfair Road, Milwaukee, WI 53226 telephone: 414-257-3399.

This is a very important matter to us, Dan, and it obviously falls under the purview of these policies.

Let me know what else is needed and I will provide it. I look forward to an expedient and fair response from all the carriers in the very near future.

Sincerely,
THE OLD WORLD TRADING COMPANY, INC.

F. P. McLaughlin, Senior Vice President"

Old World notified Twin City and California Union of the BASF suit on May 25, 1989, and May 23, 1989, respectively. Old World vigorously defended BASF's suit. By the time the notice was first given to any of its carriers, Old World had incurred over $500,000 in attorney fees and had taken over 41 depositions.

Twin City filed a declaratory judgment action on January 22, 1990, and California Union filed a declaratory judgment action on February 26, 1990, both contending they had no duty to defend or indemnify Old World in the BASF litigation. California Union and Twin City consolidated their declaratory judgment actions seeking nonliability to Old World under policies of umbrella insurance. California Union's policy had a limit of $10 million with an underlying retained limit of $10,000, effective November 18, 1984, through November 18, 1985. Twin City issued two $10 million policies to Old World, effective from September 24, 1982, through November 1983, and from November 18, 1983, through November 18, 1984.

Subsequently, Twin City filed its motion for summary judgment asserting a late notice defense. Twin City argued that Old World breached Twin City's policy by failing to give it notice of the BASF lawsuit "as soon as practicable," according to the terms of the policy. Twin City further claimed that Old World's failure to give it notice of the BASF lawsuit until 32 months after service of summons was untimely, as a matter of law.

Twin City's policies contained the following conditions:

"3. Notice of Occurrence:

Whenever it appears that an occurrence is likely to involve indemnity under this policy, written notice thereof shall be given to the Company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence, the names and addresses of the injured and available witnesses.

4. Assistance and Cooperation of the Insured:

The Company shall have the right and shall be given the opportunity to associate with the insured or its underlying insurers, or both, in the defense and control of any claim suit or proceeding which involves or appears reasonably likely to involve the Company and in which event the insured, its insurers and the Company shall cooperate in all things in defense of such claim, suit or proceeding.

The insured shall cooperate with the underlying insurers as required by the terms of the underlying insurance and comply with all the terms and conditions thereof, and shall enforce any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury, property damage or advertising injury with respect to which insurance is afforded under this policy or the underlying policy."

Similarly, California Union filed a motion for summary judgment. California Union also argued that Old World's notice to it about the BASF lawsuit was late as a matter of law. The California Union policy contained the following conditions:

"(a) In the event of an occurrence, reasonably likely to exceed the retained limit, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to The Company or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the Insured, the Insured shall immediately forward to The Company every demand, notice, summons or other process received by him or his representative.

(c) The insured shall cooperate with The Company and upon The Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution of indemnity against any person or organization of [sic] who may be liable to the Insured because of personal injury or property damage or advertising injury with respect to which insurance is afforded under this policy; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense; however, if the amount of ultimate net loss becomes certain either through trial court judgment or agreement among the Insured, the claimant and The Company, then, the Insured my [sic] pay the amount of ultimate net loss to the claimant to effect settlement and, upon submission of due proof thereof. The Company shall indemnify the Insured for that part of such payment which is in excess of the retained limit, or, The Company will, upon request of the Insured, make such payment to the claimant on behalf of the Insured."

On appeal, Old World contends the trial court erred by granting summary judgment on the basis that neither insurer had a duty to defend or indemnify because of their respective policies on late notice defenses. The defendant further contends that the trial court improperly ignored its contention that both insurers waived the late notice defense by their conscious failure to promptly raise it pursuant to the Illinois Insurance Code (215 ILCS 5/1 *et seq.* (West 1992)) and regulations or in accordance with their own respective policy provisions.

Both plaintiffs initially responded that the trial court properly

entered summary judgment in their behalf because Old World's notice to them of the Federal lawsuit was untimely as a matter of law. They argue that Old World's admitted 32-month delay in giving notice to its carriers violated the notice provisions of the respective insurance policies. Additionally, plaintiffs maintained that the delay does not fall into the category of "reasonable time" as delineated under Illinois case law, nor is the Illinois statutory insurance law relied upon by Old World applicable in the present case.

The trial court agreed that the plaintiffs had no duty to defend or indemnify and, on March 26, 1991, entered summary judgment in their favor and against Old World. Old World appeals the final judgment pursuant to Illinois Supreme Court Rule 301 (134 Ill. 2d R. 301). No question is raised on the pleadings.

■ The first issue is whether the insured had not given reasonable notice to the insurers to merit the trial court's granting summary judgment to the insurers as a matter of law. In the instant case, there are no disputed material facts. If there are no disputed material facts, the trial court may in appropriate circumstances decide the issue of reasonable notice as a matter of law. (*Fletcher v. Palos Community Consolidated School District No. 118* (1987), 164 Ill. App. 3d 921, 518 N.E.2d 363; *Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co.* (1979), 70 Ill. App. 3d 296, 388 N.E.2d 253.) The time within which notice is required is determined by a standard of reasonableness, based upon the facts and circumstances of a particular case. (*Fletcher v. Palos Community Consolidated School District No. 118* (1987), 164 Ill. App. 3d 921, 518 N.E.2d 363; *United States Fidelity & Guaranty Co. v. Maren Engineering Corp.* (1980), 82 Ill. App. 3d 894, 403 N.E.2d 508.) Actual prejudice to the insurer and due diligence of the insured are but factors to be considered in the propriety of the notice and do not conclusively establish the timeliness of the notice. (*Sisters of Divine Providence v. Interstate Fire & Casualty Co.* (1983), 117 Ill. App. 3d 158, 162, 453 N.E.2d 36, 39.) The purpose of the notice requirement is to enable the insurer to make a timely and thorough investigation of the injury claim. (*INA Insurance Co. v. City of Chicago* (1978), 62 Ill. App. 3d 80, 379 N.E.2d 34; *Barrington Consolidated High School v. American Insurance Co.* (1974), 58 Ill. 2d 278, 319 N.E.2d 25.) The test is whether any reasonably prudent person could foresee a lawsuit upon receipt of the first notice that would involve the insurer's policy and would either contact his attorney or his liability carrier. *Hartford Casualty Insurance Co. v. Snyders* (1987), 153 Ill. App. 3d 1040, 506 N.E.2d 627.

In *INA Insurance Co. v. City of Chicago* (1978), 62 Ill. App. 3d 80, 379 N.E.2d 34, the trial court granted INA's motion for summary

judgment, reasoning that since the facts were undisputed, the determination of whether the city used due diligence in giving INA notice of the accidents was a question of law. In *INA* the city's apparent two-month delay in failing to comply with the notice provisions was deemed to be a lack of diligence in ascertaining whether the policy was still in effect. In *Equity General Insurance Co. v. Patis* (1983), 119 Ill. App. 3d 232, 237-38, 456 N.E.2d 348, a nearly five-month delay in giving notice could not reasonably be construed as "as soon as practicable." In *Hartford,* a 7- to 13-month delay in notice was deemed a failure to act with reasonable prudence. Furthermore, in *Hartford* the court cited other opinions that found a three-month delay in giving notice was not reasonable diligence, a four-month delay in giving notice unjustified or inexcusable, a five-month delay in giving notice was not considered as soon as practicable, and a six- month delay in giving notice was not given within time.

Old World contends that the delay was due to an undertaking to determine the extent and timing of BASF's claimed losses. Old World further contends that the insurers failed to explain how they have been prejudiced by the alleged delay in notifying them of the pendency of the BASF lawsuit.

Based upon the facts, Old World failed the *Hartford* test of whether any reasonably prudent person could foresee a lawsuit upon first notice that would involve the insurers' policy and would contact an attorney or liability carrier. Old World could and did foresee a lawsuit that would involve the insurers before May 1989. In fact, the F.P. McLaughlin letter to Dan Pancake, dated April 19, 1989, states "Based upon our recent discussions and after reviewing a number of our past insurance policies, I believe that you should contact our comprehensive general liability carriers for 1983, 1984, 1985 and 1986 and our umbrella carriers for 1983 and 1984 in order to put them on notice about this matter. We specifically request that you tender the defense of this matter to the appropriate carriers at this time ***. *** [I]t obviously falls under the purview of these policies." Since Old World acknowledges that it "obviously" falls under the purview of these policies, this delay in giving notice to its insurers is unreasonable as a matter of law, based upon the undisputed facts. Additionally, by April 2, 1987, Old World knew BASF was seeking damages of $11,074,000, which is in excess of Old World's $500,000 retained limit under the California Union policy.

An insurer does not have to prove that it was prejudiced by an insured's breach of the notice clause in a policy in order to be relieved of its duty to pay. (*Illinois Insurance Guaranty Fund v. Lockhart* (1987), 152 Ill. App. 3d 603, 504 N.E.2d 857.) Lack of prejudice to the

insurer is a factor to be considered only where the insured has a good excuse for the late notice or where the delay was relatively brief. (*Fletcher v. Palos Community Consolidated School District No. 118* (1987), 164 Ill. App. 3d 921.) In the instant case, the insured did not present a good excuse for the late notice nor was the delay relatively brief; therefore, prejudice to the insurers is a factor to be considered.

■ Twin City claims prejudice by Old World's failure to promptly notify Twin City of the lawsuit because it deprived Twin City of its rights to promptly investigate the claim and to direct the settlement. In addition, prior to giving notice of the BASF lawsuit to Twin City, Old World settled the part of the action seeking injunctive relief against Old World. This partial settlement was reached in late 1987 when Old World and BASF entered into a stipulation. In the stipulation, Old World admitted some of the allegations of BASF's complaint. Old World admitted that it had not had the proper test performed on its product and that this product did not meet the performance specifications as advertised by Old World. The admissions were made by Old World over 16 months prior to the time that Old World gave the insurers notice of the BASF litigation. Twin City contends that, without proper notice, it was deprived of the right to control the defense and make the determination regarding whether the stipulation was advisable. Based upon all of the above, Twin City claims it was prejudiced by Old World's failure to promptly advise Twin City of the lawsuit, thus depriving Twin City of its contractual right to control the defense, investigation and settlement of the litigation.

California Union asserts, as in *Sisters of Divine Providence v. Interstate Fire & Casualty Co.* (1983), 117 Ill. App. 3d 158, 162:

> "[P]rejudice, or the lack thereof, is not the factor which determines coverage. Instead, courts have consistently held that the determination is based upon a standard of reasonableness, *i.e.*, did the insured give notice as soon as it was practicable for him to do so. *** Although the cited cases involve primary carriers, the same principles should apply to excess carriers as well. Consequently, plaintiff's argument that Interstate must establish prejudice in order to be relieved of liability under the policy is without merit."

Both Twin City and California Union claim prejudice by the delay in Old World giving notice of the BASF lawsuit. The delay in giving notice was a violation of both insurers' policies. Twin City's policy required notice of an occurrence as soon as practicable, and California Union required notice of an occurrence immediately. The stipulations that Old World made, the taking of over 41 depositions and the incurrence of $500,000 in attorney fees during the BASF lawsuit

before notifying the insurers of its lawsuit are evidence of prejudice to plaintiffs. Since Old World did not present a good excuse for the delayed notice, prejudice to the plaintiffs is a factor to be considered in this case.

The next issue is whether the insurers waived the defense of late notice by failing to affirm or deny coverage of claims within a reasonable time as required by the statute. In response to the question whether the trial court properly found that Old World's notice to Twin City and California Union of the underlying action brought by BASF Corporation was untimely as a matter of law, we answer in the affirmative.

However, we add the caveat that the trial court's decision can stand only if the facts show that the insurers did not waive the policy defense of untimely notice. We find that neither Twin City nor California Union waived the late notice defense. Our reasons follow.

■ The Illinois Insurance Code (215 ILCS 5/154.5 (West 1992)) and regulations state that it is an improper claims practice for any domestic, foreign or alien company transacting business in this State to commit any of the acts contained in section 154.6 (215 ILCS 5/154.6 (West 1992)). The applicable provisions of section 154.6 state that acts by a company, if committed without just cause and in violation of section 154.5, constitute an improper claims practice, as follows:

> "(b) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies;
>
> (c) Failing to adopt and implement reasonable standards for the prompt investigation and settlement of claims arising under its policies;
>
> * * *
>
> (i) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed." 215 ILCS 5/154.6 (West 1992).

According to section 919.40 of the Illinois Administrative Code:

> " 'Prompt investigation' as used in Section 154.6 (c) of the Illinois Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 766.6c) shall apply to all activities of the company related directly or indirectly to the determination of liability based on claims under the coverage afforded by the policy and shall be evidenced by a bonafide effort to communicate with all insureds and claimants where liability is reasonably clear within 21 working days after a notification of loss. Evidence of such a bonafide effort to communicate with insureds and claimants shall be maintained in the company's claim files.
>
> 'Reasonable promptness' as used in Section 154.6 (b) of the Illinois

Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 766.6b) shall mean a maximum of 15 working days from receipt of communication from a claimant or insured." 50 Ill. Adm. Code § 919.40 (1991).

■ Old World asserts that an insurer wishing to assert its nonliability under a policy must notify the insured without delay. (*Krutsinger v. Illinois Casualty Co.* (1957), 10 Ill. 2d 518, 141 N.E.2d 16.) Section 154.5 evidences a strong legislative intent to impose a duty upon insurance companies to affirm or deny coverage within a reasonable time after notification of claim. (*Dickman v. Country Mutual Insurance Co.* (1983), 120 Ill. App. 3d 470, 472, 458 N.E.2d 199.) Extended delay in informing the insured of its intention to deny liability because of the insured's breach of policy provisions, after the carrier learns of the breach, Old World maintains, constitutes a clear waiver of the breach. (See *Krutsinger v. Illinois*, 10 Ill. 2d 518, 141 N.E. 2d 16; *Kenilworth Insurance Co. v. McDougal* (1974), 20 Ill. App. 3d 615, 313 N.E.2d 673.) Waiver arises from an affirmative act, is consensual, and consists of the intentional relinquishment of a known right. (*Crum & Forester Corp. v. Resolution Trust Corp.* (1993), 156 Ill. 2d 384, 396, 620 N.E.2d 1073; *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 499, 475 N.E.2d 872.) A waiver may be express or implied, arising from acts, words, conduct or knowledge of the insurer. (*Crum & Forester Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 620 N.E.2d 1073; *Western Casualty Surety Co. v. Brochu*, 105 Ill. 2d 486, 475 N.E.2d 872.) To constitute a waiver, the words or conduct of an insurer must be inconsistent with the intention to rely on the requirements of the policy. (*Ames v. Crown Life Insurance Co.* (1980), 85 Ill. App. 3d 203, 204, 406 N.E.2d 222; *Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 393 N.E.2d 1223.) If the insurance company is fully advised of the facts bearing on its policy defense and does not insist on noncoverage but recognizes the continued validity of the policy by requiring the insured to go through the trouble and expense, if any, of preparing proofs of loss and related matters, an intention to waive would follow. (*Kenilworth Insurance Co. v. McDougal* (1974), 20 Ill. App. 3d 615, 313 N.E.2d 673.) Further, while a long delay without explanation in asserting a policy defense or disclaimer is normally not enough to constitute an estoppel or waiver, such a delay is an important factor to be considered where there is evidence of prejudice, and the length of delay is an element in determining the reasonableness or fairness of the insurer's conduct toward the insured. *Kenilworth Insurance Co. v. McDougal*, 20 Ill. App. 3d at 620; and *Zak v. Fidelity-Phenix Insurance Co.* (1966), 34 Ill. 2d 438, 444, 216 N.E.2d 113; *McMahon v. Coronet Insurance Co.* (1972), 6 Ill. App. 3d 704, 286 N.E.2d 631.

12

■ In *Intel Corp. v. Hartford Accident & Indemnity Co.* (N.D. Cal. 1988), 692 F. Supp. 1171, and *Insurance Co. of the West v. Haralambos Beverage Co.* (1987), 195 Cal. App. 3d 1308, 241 Cal. Rptr. 427, the court outlines the subtle but significant distinction between estoppel and waiver:

> "Although the terms 'waiver' and 'estoppel' are sometimes used indiscriminately, especially in the law of insurance, they are two distinct and different doctrines that rest on different legal principles. Strictly speaking, 'waiver' is used to designate the act, or the consequences of the act, of one side only, while 'estoppel' is applicable where the conduct of one side had induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts." 195 Cal. App. 3d at 1320 n.6, 241 Cal. Rptr. at 432 n.6.

■ In the instant case, based upon the *Intel* definition of estoppel and waiver, estoppel has no application in this case. The conduct of one side had not induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts.

The Insurance Code, section 154.6(i), refers to a "reasonable time" after proof of loss statements have been completed for the insurer to affirm or deny coverage. According to the record, clearly there is no evidence of express waiver of the late notice policy defense by Twin City or California Union. Likewise, there is no evidence of implied waiver of late notice by their conduct. On June 15, 1989, Twin City acknowledged notification by Old World of its claim, stating that "We have received notification of this event and have assigned the file number shown. Please refer to it in future correspondence." Twin City conducted a four-month investigation of the claim and on October 2, 1989, notified Old World of its intent to assert the late notice defense in its reservation of rights letter. Considering that the litigation between BASF and Old World had been going on for 32 months before Twin City was notified, during which time at least 41 depositions had been taken and $500,000 in attorney fees incurred, we find that Twin City's notification to Old World of its intention to assert the late notice defense was done within a reasonable time and that no waiver can be inferred from Twin City's conduct.

On June 23, 1989, California Union initiated a reservation of rights letter to Old World. The reservation of rights letter states, in part:

> "California Union pursuant, to its Umbrella Policy, has undertaken a review of this claim in order to determine California Union's duties and obligation under its policy. By such conduct,

California Union does not intend to waive its right to deny coverage of the claim. Such conduct by California Union and/or its representatives, is subject to all of the terms, provisions and conditions of its policy. Your attention is specifically drawn to the following matters constituting a Reservation of Rights as respects potential indemnity for loss."

While California Union does not mention "late notice" in its reservation of rights letter, the language of the letter explicitly states that California Union does not intend to waive its right to deny coverage of the claim. Additionally, we do not find the conduct of California Union inconsistent with the intention to rely on the requirement of the policy that Old World was to immediately forward to the company every demand, notice, summons or other process received. Clearly there is no express waiver, nor is there implied waiver by conduct.

Based on the foregoing reasons, we affirm the summary judgment in favor of Twin City. We affirm the summary judgment in favor of California Union.

Affirmed.

BUCKLEY and CAMPBELL, JJ., concur.