In the Matter of The CELOTEX
CORPORATION, Debtor.

The CELOTEX CORPORATION,
et al., Plaintiffs,

v.

AIU INSURANCE COMPANY,
et al., Defendants.

Bankruptcy Nos. 90–10016–
8B1, 90–10017–8B1.
Adv. No. 91–40.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 23, 1996.

Jeffrey W. Warren, Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, FL, for Debtor.

Charles P. Schropp, William R. Daniel, Schropp, Buell & Elligett, P.A., Tampa, FL, Deborah A. Swindells, Karen L. Bush, Nicholas J. Zoogman, Anderson, Kill, Olick & Oshinsky, Washington, DC, Stephen A. Madva, Montgomery McCracken Walker & Rhoads, Philadelphia, PA, Bruce Bishop, Willcox & Savage, Norfolk, VA, for Plaintiff.

George N. Wood, Vice President and General Counsel, The Celotex Corporation, Tampa, FL.

Sara Kistler, Assistant United States Trustee, Tampa, FL.

John W. Kozyak, Kozyak Tropin Throckmorton & Humphreys, P.A., Miami, FL, for Asbestos Property Damage Claimants Committee.

Charles M. Tatelbaum, Johnson, Blakely, Pope, Boker, Ruppel & Burns, P.A., Clearwater, FL, for Unsecured Trade Creditors Committee.

William Knight Zewadski, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, for Unofficial Asbestos Health Claim Co–Defendants Committee.

H.C. Goplerud, Honigman Miller Schwartz and Cohn, Tampa, FL, for Asbestos Health Claimants Committee.

Sheldon S. Toll, Honigman Miller Schwartz & Cohn, Detroit, MI, for Asbestos Health Claimants Committee.

Daniel C. Sauls, John Flyger, Steptoe & Johnson Company, Washington, DC, for Highlands Insurance Co. and Old Republic Insurance Company.

Robert J. Bates, Jr., Maryann C. Hayes, Stanley V. Figura, Bates Meckler Bugler & Tilson, Chicago, IL, for Eric Reinsurance Company.

Deborah M. Paris, Paris & Associates, Tampa, FL, for Certain Underwriters at Lloyd's of London (Plaisted).

John A. Yanchunis, Blasingame Forizs & Smiljanich, St. Petersburg, FL, for Transportation Insurance Company, Continental Casualty Company, Columbia Casualty Company, Eric Reinsurance Company and Zurich American Insurance Company.

David C. McLauchlan, Andrew Kochanowski, Lord Bissell & Brook, Chicago, IL, for Certain Underwriters at Lloyds of London.

Thomas B. Keegan, Robins, Kaplan, Miller & Ciresi, Chicago, IL, for Employers Mutual Casualty Company.

William Clearly, Mendes & Mount, New York City, for Barrett and London Market Companies.

Gregory J. Willis, Bart Billbrough, Walton Lantaff Schroeder & Carson, Miami, FL, for Florida Insurance Guaranty Association, Inc.

W. Gray Dunlap, Jr., Tampa, FL, for Hartford Accident and Indemnity Company, First State Insurance Company and Twin City Fire Insurance Company.

Rolph Gilbertson, Zeele & Larson, Minneapolis, MN, for Employers Insurance of WAUSAU.

Margaret Jones, Grippo & Eldon, Chicago, IL, for American Insurance Company and National Surety Corporation.

Thomas B. Mimms, Jr., MacFarlane Ferguson, Tampa, FL, for American Home Assurance Company, AIU Insurance Company, Highlands Insurance Company, Old Republic Insurance Company, Granite State Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA., Employers Mutual Casualty Company, American Insurance Company, National Surety Company and St. Paul Surplus Lines Insurance Company.

Christine A. Nykiel, Jackson & Cambell, Washington, DC, for American Home Assurance Company, AIU Insurance Company, Granite State Insurance Company, Lexington Insurance Company and National Union Fire Insurance Company of Pittsburgh, PA.

Elizabeth G. Repaal, Harris Barrett, Mann & Dew, Tampa, FL, for Northbrook, as successor in interest to Allstate Insurance Company.

Mary A. Lau, Lau Lane Pieper Conley & McCreadie, P.A., Tampa, FL, for Employers Insurance Company of WAUSAU.

Elizabeth B. Sandza, Cynthia T. Andreason, LeBoeuf Lamb Greene & MaCrae, Washington, DC, for Hudson Insurance Company and Gibraltar Casualty Company.

William S. Daskam, IV, Butler Burnette & Pappas, Tampa, FL, for Continental Insurance Company.

Rick Dalan, Clearwater, FL, for Royal Indemnity Company.

Jeffrey A. Aman, Aman & Lins, Tampa, FL, for Insurance Company of North America and California Union Insurance Company.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT ON TIMELINESS OF NOTICE OF BODILY INJURY CLAIMS FILED BY ERIC REINSURANCE AND PLAISTED LONDON MARKET

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

### I. INTRODUCTION

THIS CAUSE came on for consideration upon Defendant Eric Reinsurance Company's ("Eric") Motion for Summary Judgment on Count III of the Second Amended Complaint (Bodily Injury) for Failure to Comply with the Notice Condition of the American Excess Policies and Plaisted London Market Defendants' ("London") Motion for Partial for Summary Judgment that Certain Pre–Petition Asbestos–Related Claims are Barred from Coverage on Grounds that Debtors Failed to Provide Timely Notice of Claims. Movants are collectively referred to as "Insurance Companies". This Court considered all arguments and evidence consistent with a ruling on a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) (holding the standard of

proof in summary judgment rulings is the same as it would be at trial); *Celotex v. Catrett*, 477 U.S. 317, 323–35, 106 S.Ct. 2548, 2553–59, 91 L.Ed.2d 265 (1986) (discussing the appropriate burdens of proof and types of evidence to use in summary judgment decisions); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986) (detailing the elements of summary judgment analysis).

These decisions establish the proponent of the motion for summary judgment has the burden to establish the prima facie case by a preponderance of the evidence. In this case the Insurance Companies bear the burden of establishing the following: (1) Debtor had the obligation to give notice of occurrence to the excess insurance companies under the specific insurance policies; (2) Debtor failed to give such notice within policy terms, or that such notice was not given within a reasonable time under the circumstances of the particular case.

It is interesting to note if this was an evidentiary hearing the burden would be different. The Debtor would bear the burden of showing notice as previously determined by this Court. Nonetheless, the Court finds Eric established its prima facie case as associated with the issues of notice. The requirement for Debtor to give notice and notice not having been given, the burden shifts to the Debtor to establish any notice given under Eric's policy was indeed reasonable, or not required. The Court finds London's Motion for Partial Summary Judgment should be denied as material issues of fact remain as to notice under its policy.

## II. APPLICABLE LAW

### 1. Notice Generally

■ At this point, it should be remembered the choice of law is Illinois.[1] Illinois law establishes the legal standard for proving notice of occurrence. Its premise is predicated on the Debtor's duty to notify the excess carrier of an occurrence or an accident as relates to an asbestos bodily injury. The Illinois courts hold such notice is required by the policy, and is not a technicality but a prerequisite to coverage, i.e., a condition precedent to the insured's policy coverage. There are cases illustrative of this issue, *American States Insurance Co. v. National Cycle, Inc.*, 260 Ill.App.3d 299, 197 Ill.Dec. 833, 842, 631 N.E.2d 1292, 1301 (1994); *University of Illinois v. Continental Casualty Co.*, 234 Ill.App.3d 340, 175 Ill.Dec. 324, 340–41, 599 N.E.2d 1338, 1354–55 (1992); *Transamerica Insurance Co. v. Interstate Pollution Control, Inc.*, 1995 WL 360460 at *14–*17 (Dist.Ct.N.D.Ill. June 16, 1995). However, there are numerous other decisions of the same ilk. Most of those decisions concern the requirement that notice be given as soon as practicable, which the Illinois courts have discerned to mean reasonable notice.[2] These cases address the issue of when the Debtor, as a reasonably prudent insured, has cause to believe that a particular occurrence will require notice to its primary insurance carrier. *Industrial Coatings Group, Inc. v. American Motorists Insurance Co.*, 276 Ill.App.3d 799, 213 Ill. Dec. 317, 322, 658 N.E.2d 1338, 1343 (1995).

### 2. Notice to Excess Carriers

■ The reasonableness of notice as it applies to excess carrier insurance coverage has been applied more expansively. It is expanded based on the fact there are different duties, mainly the duty to defend and the duty to investigate the occurrence, which are placed upon the primary carrier as distinct from the umbrella and excess carriers. The excess carriers normally do not expect they will receive a notice for an occurrence associated with an insured unless the excess cover-

---

1. *Celotex Corp. v. AIU Ins. Co., et al. (In re Celotex Corp.)*, 194 B.R. 668, 673 (Bankr.M.D.Fla.1996).

2. *See, e.g., Barrington Consol. High Sch. v. The Am. Ins. Co.*, 58 Ill.2d 278, 319 N.E.2d 25, 27 (1974).

The Court notes the Eric policies require "immediate" or "prompt" notice of loss. *See* Def. Eric Reins. Co.'s Mot. for Summ. J. on Count III

of the Second Am. Compl. (Bodily Injury) for Failure to Comply with the Notice Condition of the Am. Excess Policies at pp. 2–3. "Illinois law does not require prejudice to the insurer where the notice provision is one of *prompt* notice...." *Highlands Ins. Co. v. Lewis Rail Serv. Co.*, 10 F.3d 1247, 1250 (7th Cir.1993).

age will, in fact, be affected by such occurrence (i.e., the insured's liability will exceed the primary and umbrella coverage limits and invade the excess insurance coverage layers). *Atlanta International Insurance Co. v. Checker Taxi Co.*, 214 Ill.App.3d 440, 158 Ill.Dec. 228, 231–32, 574 N.E.2d 22, 25–26 (1991).

As a result to this layering of coverage, when an occurrence takes place the insured has the ability to ascertain how those coverage layers may be affected by the occurrence. With this knowledge, the insured then has some discretion in determining when and if the excess coverage will be implicated and thus, whether notice is required. Therefore, as to an excess carrier, the test relates more to the question of when will the reasonable prudent insured have cause to believe the excess insurance coverage will be implicated by the occurrence. *See American States*, 197 Ill.Dec. at 842, 631 N.E.2d at 1301; *Hartford Accident & Indemnity Co. v. Rush–Presbyterian–St. Luke's Medical Center*, 231 Ill.App.3d 143, 172 Ill.Dec. 641, 645–46, 595 N.E.2d 1311, 1315–16 (1992); *Checker Taxi Co.*, 158 Ill.Dec. at 231, 574 N.E.2d at 25. *See also, Highlands Insurance Co. v. Lewis Rail Service Co.*, 10 F.3d 1247, 1250 (7th Cir.1993); *Atlanta International Insurance Co. v. Yellow Cab Co., Inc.*, 962 F.2d 657, 659 (7th Cir.1992) *reh'g denied with opinion*, 972 F.2d 751 (1992).

While some of these cases distinguish *Hartford v. Rush*, 172 Ill.Dec. 641, 595 N.E.2d 1311, it is done to a certain degree premised upon the status of the particular litigation of the case juxtaposed against the notice requirement and, ultimately, the question of prejudice.[3] Notwithstanding the courts have refrained from injecting prejudice as a substantive factor, they consider it as one of the factors associated with reasonableness. The Illinois courts, however, have been willing to set forth certain indicators, not bright lines, which should be observed

when the trial court considers the facts and measures the reasonableness of the notice.

### 3. Notice Indicators

There are four indicators recognized when examining the reasonableness of notice under Illinois law. One of the indicators relates to the sophistication of the insured. *Highlands Insurance*, 10 F.3d at 1250; *International Harvester Co. v. Continental Casualty Co.*, 33 Ill.App.2d 467, 179 N.E.2d 833, 835–36 (1962). The timing of the notice in relationship to the status of the ongoing claims or the ongoing litigation is another implicit indicator. *Yellow Cab*, 962 F.2d at 659. The length of time between the insured's knowledge of the occurrence and the notice is also often discussed as an indicator. Whether notice has taken three months, eight months, or thirty-two months is a factor to be considered but it is not conclusive. Due diligence of the Debtor in handling the claims, or knowledge of how those claims may impact rights under the policies, is considered part of the timing contingency. *Twin City Fire Insurance Co. v. Old World Trading Co.*, 266 Ill.App.3d 1, 203 Ill.Dec. 264, 267–68, 639 N.E.2d 584, 587–88 (1993); *Hartford v. Rush*, 172 Ill.Dec. at 646–47, 595 N.E.2d at 1316–17; *Transamerica Insurance Co.*, 1995 WL 360460 at \*15–\*16.

### III. FACTS

The gravamen of the dispute as it pertains to Eric is associated solely with Debtor's notice of occurrence to Eric of non-asbestosis bodily injury claims. Prior to 1977, Debtor had insurance coverage from numerous insurance companies for all asbestos bodily injuries claims. Subsequent to 1977, similar cohorts of excess insurance carriers negotiated with Debtor for coverage which included an exclusion for "asbestosis."[4] Debtor gave notice of occurrence to the pre–1977 insurance carriers regarding asbestos bodily injury claims. It did not

---

3. *American Country Ins. Co. v. Cash*, 171 Ill. App.3d 9, 120 Ill.Dec. 834, 835, 524 N.E.2d 1016, 1017 (1988); *Illinois Ins. Guar. Fund v. Lockhart*, 152 Ill.App.3d 603, 105 Ill.Dec. 572, 574, 504 N.E.2d 857, 859 (1987). But see, *Transamerica Ins.*, 1995 WL 360460 at \*14–\*15; *Highlands Ins.*, 10 F.3d at 1249–50.

4. *See Celotex Corp. v. AIU Ins. Co., et al. (In re Celotex Corp.)*, 175 B.R. 98, 102–04 (Bankr. M.D.Fla.1994). Debtor took the position in this litigation the "asbestosis" exclusion only applied to that single disease. *See id.*

begin to give notice of non-asbestosis bodily injury claims to post–1977 excess carriers until 1983. The Defendant insurance companies take the position Debtor's notice in 1983 for claims that arose between 1977 and 1983 for non-asbestosis bodily injury claims is not reasonable. From this perspective, more specific facts associated with Debtor's insurance coverage and the handling of claims related to that coverage can be perceived. These specific facts fall within the reasonableness indicators provided by Illinois law.

No one should doubt the Debtor's sophistication as associated with its insurance coverage and related claims. *See Celotex Corp. v. AIU Insurance Co., et al. (In re Celotex Corp.)*, 175 B.R. 98, 110 (Bankr.M.D.Fla. 1994)) (determining the meaning of the term "asbestosis"); *Celotex Corp. v. AIU Insurance Co., et al. (In re Celotex)*, 194 B.R. 668, 672–73 (Bankr.M.D.Fla.1996), (determining the issue of choice of law). For over a decade, the Debtor negotiated with numerous insurance companies with the assistance of its broker, Rollins Burdick and Hunter ("RBH"). Bales of documents and information were provided to retail and wholesale brokers, as well as directly to insurance companies, regarding the Debtor's acquisition and renewal of its general comprehensive liability insurance coverage. At one point, Celotex, through its parent, Jim Walter Corporation, had its own insurance agency, a separate insurance department, a legal department involved in the decision-making process as associated with insurance coverage, and internal claims handling procedures covering asbestos property and bodily injury claims.

The evidence establishes at some point the Debtor requested its primary and umbrella insurance companies reimburse it for $750,-000 for defense costs incurred by the Debtor in defending against asbestos claims. Further, the evidence establishes the Debtor paid, from its own funds, asbestos bodily injury claims which it now seeks to have the Defendant Insurance Companies reimburse under existing insurance policies.

RBH, notwithstanding any party's characterization of its authority, was the Debtor's agent at least for the purpose of acquiring insurance coverage over a broad spectrum of time and within broad parameters. Moreover, RBH was involved with Debtor's claim processing and the corporate process of notifying Debtor's insurance carriers as to occurrences and claims.

From the number of asbestos personal injury claims and the rate at which they arose in the 1970's and the fact these claims dealt with asbestosis as well as other asbestos bodily injuries, reasonableness of the Debtor's notice to the post–1977 excess carriers must be linked to the Debtor's method of processing these bodily injury claims under the unique circumstances of its insurance coverage. The Debtor had all these administrative mechanisms available in its corporate domain and they knew full well from their pre–1977 excess coverage policies that they had to give notice of occurrence as to bodily injury claims. Under these circumstances, any notice to excess carriers had to be predicated upon a sophisticated insured establishing a mechanism which would assure the excess carriers would be noticed of any non-asbestosis personal injury claims. This is especially true when the Debtor took the position the asbestosis exclusion only applied to that disease. Additionally, the Debtor knew there was no primary coverage for any asbestos personal injury claims post–1977.

In fact, this Court finds it implausible to believe from the overwhelming amount of evidence as to the Debtor's management of its insurance coverage, claims, and litigations, as well as the corporate decision-making process related to insurance coverage, that Debtor did not know of the complexities associated with the excess insurance coverage. These complexities include notice requirements under the policy, requirements associated with the implication of excess carriers, and the effect of giving or not giving notice under the facts and circumstances between the 1977 and 1983 time frame. Debtors could choose which insurance company out of all its coverage it would give notice to, permitting Debtor to regulate exhaustion of various policies, pre– or post–1977. While the right to select which carrier was to receive notification and which policies were to be exhausted is arguably correct, it does not

dispense with the Debtor's obligation under the insurance policy to give notice as a condition precedent to post–1977 coverage.

Because of the absence of primary insurance coverage for the Debtor between 1977 and 1982, there would be a faster, implication of the excess insurance layers during this period of time. In other words, if the primary insurance coverage is picking up the claims, the next insurance company up the line of coverage is insulated from that claim. Not the situation post–1977. Downstream protection is unavailable to the excess carriers from the primary insurer.

Because the excess limits were the same in the last year of the pre–1977 excess policies and the beginning years of the post–1977 policies, one wonders why Debtor only gave notice on pre–1977 excess policies even though there were post–1977 asbestos bodily injury claims. If the Debtor had coverage for post–1977 excess coverage and Debtor made no distinctions in segregating its asbestos claims between asbestosis and nonasbestosis disease claims, there is a suggestion there was a lack of procedure or due diligence by the Debtor to ascertain claims or how such claims would impact on post–1977 excess insurance coverage.

If Debtor initially believed it did not have coverage for asbestos disease claims in between 1977 to 1983, what evidence relating to such coverage and the Debtor's duty to give notice sparked the Debtor to give notice in 1983? In other words, how did Debtor perceive in 1983 that it did have coverage for other than asbestosis bodily injury claims post 1977.

Some decisions discuss the insured's knowledge of its policy or coverage or some other coverage not necessarily its own as a reasonableness factor. *Cash*, 120 Ill.Dec. at 836, 524 N.E.2d at 1018; *Thomas v. Aetna Casualty & Surety Co., et al.*, 28 Ill.App.3d 363, 328 N.E.2d 374, 378 (1975); *International Harvester*, 179 N.E.2d at 835. These courts note an insured may not know somebody else is covered for the same accident or

that there may be other coverage available. All these issues reflect either due diligence on the part of the insured, or its sophistication. Basic questions arise: When did you find out about the insurance? What did you find out about the insurance? Insurance Company, did you know about additional coverage that you provided the insured or did you know about other coverage at another insurance company? It is not too much trouble, said one of the courts, for the insurance company to check out this additional coverage, especially if it's their own.

Similarly, such diligence applies to the Debtor, mainly because this Debtor knows the extent of all its policies and coverage. Celotex had a vast expanse of knowledge and energy placed in its insurance coverage and, therefore, should have been reasonably capable of figuring out when insurance covered an occurrence. There is no evidence to suggest when the Debtor's epiphany arrived as to coverage for post–1977 occurrences.[5]

■ Similarly, Debtor's argument the notice was reasonably delayed in order to exhaust Debtor's pre–1977 policies or, possibly, pre–1972 policies, fails for the same reason. Debtor was well aware at the beginning of the post–1977 excess insurance era of its asbestos bodily injury claims, their magnitude, or, at least, their escalation, the concerns over asbestos in the country, and the forthcoming impact on all insurance coverage. As each claim was filed, Debtor became more and more sophisticated at dealing with these claims internally, and any insurance coverage strategy as to maximized coverage is not a reasonable excuse to offset the duty of giving notice to the excess carriers. The Debtor's own disclosure statement in the general bankruptcy case reflects the Debtor's ability to settle and exhaust insurance policies prior to the notice to the post–1977 excess carriers, thereby suggesting a strategy that is fundamentally not reasonable as that strategy promotes the resolution of

---

5. In its oral ruling, this Court set forth its judicial hunch how the Debtor arrived at the coverage between 1977 and 1983 for asbestos personal injury claims other than asbestosis. *See* Joseph

C. Hutcheson, Jr., "*The Judgment Intuitive: The Function of the 'Hunch' in Judicial Decision*", 14 **Cornell L.Q.** 274 (1929).

claims without consideration of the impact on the post–1977 excess carriers which this Court believes is mandated by the reasonableness concept associated with notice under Illinois law.

It is clear from the disclosure statement that settlements on pre–1977 policies continue far into the 1980's when claims would clearly impact upon the post–1977 excess coverage. Assuming that prejudice is material under the language of Eric's policies, the excess carriers were definitely put at a significant disadvantage by Debtor's strategy. *See Highlands Insurance,* 10 F.3d at 1250; *Transamerica Insurance Co.,* 1995 WL 360460 at *14. .

The excess carriers were not involved in the settlements or the claims paid by the Debtor or the cost associated with any litigation prior to the giving of the notice by Debtor in 1983. Interestingly enough, the excess carriers are called upon now to make payments on those claims they were not notified of between 1977 and 1983. It can be equally argued from the evidence that Debtor's delay in giving notice to the post–1977 excess carriers was to insure continual renewals of their existing excess insurance policies while Debtor allegedly exhausted other pre–1977 policies. This purpose would be equally unreasonable.

Debtor's strategy was unreasonable in light of the condition precedent to give notice. Similarly, it could be argued notice was not given until April 1983 to post–1977 excess

carriers because it was not until such time that Debtor believed it had coverage for asbestos bodily injury claims notwithstanding the asbestosis exclusion. In this later coverage scenario, Debtor's actions are once again unreasonable as to giving notice to the post–1977 carriers because they have not met their burden of showing due diligence or justifiable excuse in ascertaining their own "belated" insurance coverage. *Compare Hartford v. Rush,* 172 Ill.Dec. at 645–46, 595 N.E.2d at 1315–16, *with Yellow Cab Co.,* 962 F.2d at 659–60; *See Sisters of Divine Providence v. Interstate Fire & Cas. Co.,* 117 Ill.App.3d 158, 72 Ill.Dec. 731, 734, 453 N.E.2d 36, 39 (1983).

▮ In order for the Debtor to reasonably determine the probability existed the excess carriers would be implicated by any claim, assumes the Debtor, under any circumstances herein, would have had a method, mechanism, or process to ascertain when those claims would impact the excess carriers. The Debtor argues the annual submission/applications for excess insurance coverage submitted to RBH and from them to the post–1977 excess carriers was notice of these claims or occurrences as relates to asbestos related bodily injury claims. The evidence, however, is clear the post–1977 insurance companies believed their policies excluded all asbestos bodily injury coverage. Debtor was on notice of the insurance companies' understanding of the asbestosis exclusion [6] and did not seek to disaffirm such a belief until the 1983 lawsuit in the District of Columbia.[7]

6. Debtor's own annual reports in the post–1977 period state: "Celotex has brought a declaratory judgment action against all of its comprehensive liability insurance carriers for policy years prior to October 1, 1977 (coverage for asbestos-related diseases has been excluded from policies since that date)...." Jim Walter Corporation 25th Annual Report For the Year Ended August 31, 1980, at p. 31 (Phase II Exh. No. JD5754); *see* Jim Walter Corporation Annual Report For the Year Ended August 31, 1981, at p. 31 (Phase II Exh. No. JD5755) (containing substantially the same language); Jim Walter Corporation Annual Report for the Year Ended August 31, 1982, at p. 33 (same).

7. Debtor suggests that particular personal injury lawsuits filed against Debtor should be sufficient

enough to put an insurance company on notice through the Ad damnumn clauses in the complaint. Nonetheless, Ad damnum clauses may be merely a statement of jurisdictional amount and not in any way suggest any relationship with actual amounts of damages or insurance coverage or notice. Even as a jurisdictional amount, we all understand that Ad damnum clauses would be, at a minimum, a minimal amount, but more important herein is that if the Debtor has the duty of due diligence in ascertaining the extent of these claims vis-a-vis their excess insurance coverage, a significant number of claims with various Ad damnum clauses may *inter alia* place one on inquiry notice of the impact of these numerous potential damage claims on insurance coverage.

Lastly, Debtor argues there was a futility of notice. Because of the pre–1977 insurance carriers' refusal of coverage, there is a suggestion by the Debtor it would be futile for them to give notice to the post–1977 carriers. First, the pre–1977 excess insurance carriers had separate policies from the post–1977 excess insurance carriers. In many instances the insurance carriers were not the same in the pre–1977 as compared with the post–1977 era. The Illinois law on futility arises only after notice is given and coverage refused, not beforehand. *See Davis v. United Fire & Casualty Co.*, 81 Ill.App.3d 220, 36 Ill.Dec. 404, 407, 400 N.E.2d 984, 987 (1980).

## IV. CONCLUSION

The Debtor did not give reasonable notice under the excess insurance policy issued by Eric. The notice was unreasonable for several reasons. First, the primary level of insurance was absent in the 1977–1983 time period, making it more likely the Debtor needed to notify excess carriers. The primary carrier, Aetna, even took the step of writing a letter, (Letter from Aetna Life & Casualty to Robert Emerton, III of Jim Walter Corporation, Joint Defense Exh. No. 4142). The letter is dated December 5, 1979 and suggests the Debtor put all excess carriers present, past, and future on notice, and also speaks quite extensively of the question of coverage of all the excess carriers if there is no notice. Under these facts, a reasonably prudent insured would ascertain the excess carriers were likely to be implicated.

Further, the Debtor does not offer any reasonable excuse for the delay in giving notice to Eric, nor offer any reasonable explanation for the timing of the notice. Debtor, as a sophisticated insured accustomed to the issues surrounding insurance coverage, even to the point of operating its own insurance department for a time, took no steps to notify Eric for a period of five years. The Court finds the failure to give notice unreasonable and violative of the due diligence owed by an insured to the carrier.

For the reasons stated herein, this Court finds there are no material issues of fact as regards movant Eric, as it has met its burden of proof regarding its motions for summary judgment and the Debtor has failed to establish the reasonableness of any notice as required by Eric's policy's notice of loss. It is this Court's conclusion the Debtor had sufficient information at hand when it received Aetna's letter (Letter, Joint Defense Exh. No. 4142), the post–1977 excess insurance carriers were implicated by any non-asbestosis bodily injury claim.

As to the motion for summary judgment filed by London Plaisted Market, that motion will be denied. By this denial the Court does not suggest that its previous findings as to Eric should be disregarded. This Court denies the motion because it is of the position there is a material issue of fact as to reasonable notice in that London authorized RBH to be its recipient of notice from the Debtor. This Court is not satisfied the material issue of fact concerning such specific notice, i.e., the Debtor's insurance broker is also the recipient of notice to the carrier, would allow the Court to grant the motion for summary judgment.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED Eric's motion for summary judgment is granted. It is further

ORDERED, ADJUDGED AND DECREED London Plaisted Market's motion for summary judgment is denied.

DONE AND ORDERED.