NELL BROWNLEE *et al.*, Plaintiffs, *v.* WESTERN CHAIN COMPANY, Defendant and Third-Party Plaintiff-Appellant.—(MIDLAND INSURANCE COMPANY, Third-Party Defendant-Appellee.)

First District (5th Division)　No. 78-2096

Opinion filed July 6, 1979.—Modified on denial of rehearing August 17, 1979.

Robert A. Holstein, Paul M. Lurie, and James L. Pittman, all of Chicago (Fohrman, Lurie, Holstein, Sklar & Cottle, Ltd., of counsel), for appellant.

Jacobs, Williams and Montgomery, Ltd., of Chicago (Barry L. Kroll and David A. Novoselsky, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Western Chain Company (Western) brought suit against its insurer, Midland Insurance Company (Midland), to enforce the terms of an umbrella liability policy. The trial court found that Western's notice of occurrence was untimely as a matter of law and granted summary judgment in favor of Midland. The sole issue on appeal is the propriety of the summary judgment.

According to the terms of an umbrella liability policy in effect from March 10, 1971, to March 10, 1974, Midland agreed to indemnify Western to the limit of $1,000,000 for judgments and the settlement of claims against the insured on account of personal injury resulting therefrom; provided, however, that the insurer was liable only for the ultimate net loss in excess of the amount recoverable under the provisions of underlying insurance coverage. The umbrella policy denominated American Mutual Insurance Company (American Mutual) as an underlying insurer and listed its applicable bodily injury limitation as $100,000 per person.

The umbrella policy provided, in pertinent part, as follows:

"The term 'occurrence' means an accident, including injurious exposure to conditions, which results, during the policy period, in

bodily injury or property damage neither expected nor intended from the standpoint of the Insured.

* * *

This policy is subject to the following conditions.

* * *

G. Notice of Occurrence. Whenever the Insured has information from which the Insured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Insured should be held liable, is likely to involve this policy, notice shall be sent to [Midland] as soon as practicable, provided, however, that failure to give notice of any occurrence which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

H. Assistance and Cooperation. [Midland] shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Insured but [Midland] shall have the right and shall be given the opportunity to associate with the Insured or the Insured's underlying insurers, or both in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves, or appears reasonably to involve [Midland] in which event the Insured and [Midland] shall cooperate in all things in the defense of such claim, suit or proceeding."

After similarly defining the term "occurrence" and providing for notice thereof, the American Mutual policy undertook the duty to defend suits against the insured which fall within the parameters of the policy and further provided that "[i]f claim is made or suit is brought against the insured, the insured shall immediately forward to [American Mutual] every demand, notice, summons or other process received by him or his representative."

It is undisputed that on January 15, 1973, Arthur Hill, president of Western, received a summons (served and transmitted pursuant to the terms of the Mississippi long arm statute) which informed him that suit against Western had been filed in Simpson County, Mississippi, by Mrs. Nell Brownlee and her four minor children; that the amount actually demanded of Western was stated in the declaration on file in the court clerk's office; that Western was to appear to answer such declaration at a term of court occurring on the second Monday of March, 1973; and that judgment would be demanded at such time. Hill placed a question mark on the summons and set it aside with other correspondence on his desk. It appears that if inquiry had been made, Western would have been informed from the declaration filed by Mrs. Brownlee that a chain allegedly manufactured by it was used to suspend an automobile and that

it failed, due to an alleged manufacturing defect, causing the car to fall and kill Billy Brownlee, her husband. The declaration further stated that Billy was 28 years old at the time of his death, earned $80 per week with a work life expectancy of 37 years, and was survived by a wife and four minor children. The ad damnum was $225,000.

The summons remained on Hill's desk until June 23, 1973, when Western received a letter from Mrs. Brownlee's attorney stating that on March 20, 1973, a default judgment had been entered against Western in the amount of $204,160 and that term time had passed. Enclosed with the letter were copies of the interlocutory and final default decrees, which revealed that Mrs. Brownlee *et al.* had brought a wrongful death action sounding in products liability. Shortly thereafter, Hill notified Midland and American Mutual of the default judgment and requested that American Mutual discharge its obligation to defend by assuming responsibility for vacatur proceedings.

American Mutual declined to represent and defend Western on ground that the Brownlee summons had not been forwarded to it in a timely fashion. Western, through Hill, then retained counsel to set aside the default judgment, but its motion to vacate was denied.

When American Mutual refused to prosecute an appeal from the denial order, Western brought an acton in the Federal court seeking, among other relief, a declaration that American Mutual was bound to defend Western in this matter. It was asserted in this action that the Brownlee summons "did not contain a complaint and thus was indistinguishable from the many other legal notices received by Western; Western's president, Arthur W. Hill was distracted from his duties as president by the death of his wife and his own personal health problems; Western Chain's delay in notifying the insurance company should be excused due to non-culpable negligence." (*Western Chain Co. v. American Mutual Liability Insurance Co.* (N. D. Ill. 1974), 386 F. Supp. 440, 441.) Finding as a matter of law that Western was negligent in failing to forward the summons in a timely fashion, the court granted summary judgment in favor of American Mutual, which decision was affirmed on appeal. (386 F. Supp. 440, *aff'd* (7th Cir. 1975), 527 F.2d 986.) Subsequently, the Supreme Court of Mississippi affirmed the trial court's denial of Western's motion to vacate the default judgment. *Western Chain Co. v. Brownlee* (Miss. 1975), 317 So. 2d 418.

Mrs. Brownlee then sued in Illinois to enforce her Mississippi judgment against Western. The registration of the judgment was granted by the trial court and affirmed on appeal. (*Brownlee v. Western Chain Co.* (1977), 49 Ill. App. 3d 247, 364 N.E.2d 926, *cert. denied* (1978), 435 U.S. 968, 56 L. Ed. 59, 98 S. Ct. 1605.) In that action of Mrs. Brownlee, Western had filed a third-party complaint seeking indemnification from Midland

in the amount of the default judgment together with attorney's fees and costs expended for defense and a declaration that Midland was obligated to defend the registration suit. In its complaint, Western alleged that it did not receive information revealing the nature or seriousness of the Brownlee claim until notified of the default judgment on June 23, and that immediately upon receipt of such information it notified Midland. It was on the basis that Western had failed to notify Midland upon receipt of the Brownlee summons that the trial court granted the summary judgment for Midland, which is the subject of this appeal.

OPINION

During the course of oral argument before this court, Western admitted that if it had made inquiry it would have obtained information from the Brownlee declaration from which it would have known that notice should have been given to Midland, but it argued that the terms of the Midland policy did not impose upon it any duty to make such inquiry. It posits that absent such duty the information contained in the Brownlee summons was insufficient to raise a reasonable belief that the Midland policy was involved. Midland's tacit agreement that the summons was insufficient is indicated from the argument it made in its brief, as follows:

> "[I]f Western had made any inquiry whatsoever in response to the summons, it would quickly have learned the nature of the suit which the Brownlees had filed (to wit: a wrongful death products liability action) and it would also have determined that the death of Mr. Brownlee involved damages which were likely to involve Midland's policy thereby clearly triggering the notice provision. [Citation.] There being no real question but that even the most minimal inquiry would have revealed facts which would thereafter have required Western to notify * * * Midland, it follows that Western's omission to do so forfeited its rights under Midland's policy."

Thus, the seminal question before us is whether the terms of the Midland policy imposed the duty of inquiry upon its insured.

■■ ■ Where primary insurance coverage is conditioned upon timely notice of an occurrence to the insurer by the insured, the latter is required to act as a reasonably prudent person. (*H. H. Hall Construction Co. v. Employers Mutual Liability Insurance Co.* (1963), 43 Ill. App. 2d 62, 193 N.E.2d 51.) Among the facts and circumstances to be considered in ascertaining whether the insured has met such standard are (1) the language chosen by the insurer to define the policy's notice requirement (*Groth v. Standard Accident Insurance Co.* (7th Cir. 1959), 267 F.2d 399; (2) the presence or absence of the insured's sophistication in the world of commerce and insurance (*International Harvester Co. v. Continental*

*Casualty Co.* (1962), 33 Ill. App. 2d 467, 179 N.E.2d 833); (3) awareness on the part of the insured that an occurrence as defined by the policy has taken place (*Kenworthy v. Bituminous Casualty Corp.* (1975), 28 Ill. App. 3d 546, 328 N.E.2d 588); and (4) once aware of an occurrence, the diligence with which the insured ascertains whether policy coverage is available (*Farmers Automobile Insurance Association v. Hamilton* (1976), 64 Ill. 2d 138, 355 N.E.2d 1; *INA Insurance Co. v. City of Chicago* (1978), 62 Ill. App. 3d 80, 379 N.E.2d 34; *City of Chicago v. United States Fire Insurance Co.* (1970), 124 Ill. App. 2d 340, 260 N.E.2d 276).

The parties have directed us to no Illinois decision, nor have we found any, which has similar policy language and imposed a contractual duty on an insured to give notice of an occurrence to its excess carrier. Midland, however, places heavy reliance on *Greyhound Corp. v. Excess Insurance Co.* (5th Cir. 1956), 233 F.2d 630. In *Greyhound,* the primary insurance coverage was $40,000 for any one person injured or killed in the operation of the insured's motor vehicles and extended to $100,000 for personal injuries sustained in a single accident. Liability coverage over and above such amounts was provided by an excess insurance policy which contained the following condition:

> " 'Upon the occurrence of any accident which may involve liability on the part of the company, the assured shall give immediate written notice thereof with the fullest information obtainable at the time to the company * * *.' " (233 F.2d 630, 632.)

The insured, in *Greyhound,* was served with summons (unaccompanied by a declaration or other pleading) which indicated that two plaintiffs, husband and wife, were claiming damages in the amount of $75,000. The primary insurer was notified and undertook defense of the suit. The attorneys retained by that insurer obtained a copy of the declaration which revealed that the wife claimed damages for bodily injuries in the amount of $65,000 with derivative damage claimed by the husband in the amount of $10,000. Counsel did not share this information with the insured but, a year later, did notify the insured that plaintiffs "are deliberately attempting to build up their claim." (233 F.2d 630, 633.) Ten months thereafter, an amended declaration was filed, alleging damages in the amount of $250,000—$175,000 on behalf of the wife and $75,000 for her husband. After another year had passed, and in response to the insured's injury, the primary insurer invited the association of the insured or its excess carrier in the litigation as damages in excess of the primary coverage were sought. The excess carrier was then advised for the first time of the occurrence and denied liability on ground that notice was untimely. The insured subsequently brought a declaratory judgment action against the excess carrier, and summary judgment was granted in favor of such carrier.

On appeal, the *Greyhound* court first noted the following distinction between primary and excess coverage:

" 'It is readily apparent that in the field of third party liability insurances, the division of responsibility inherent in the use of deductibles and excess insurances is more apt to give rise to controversy. For instance, in the matter of giving notice of accident, the situation is not as straightforward as in the case of primary insurances. In primary liability insurances the insurer uniformly undertakes to investigate and defend any claim covered by the policy. Consequently such policies regularly require that the assured give to the company immediate notice of any accident or claim involving the insurance. However, in excess liability insurances (as well as in most liability insurances written over a substantial deductible) the excess insurer does not undertake to defend the assured. Consequently, the excess insurer is not interested in every accident, but only in those that may be serious enough to involve it. Excess policies, therefore, usually require an assured to give notice of claims 'that appear likely to involve the excess.' The excess carrier can then take such steps as it sees fit by way of additional investigation, etc., to protect its own interests. Under the notice provision of the excess wording the exercise of some judgment on the part of the assured in evaluating the case is contemplated. The provision is, however, a condition precedent to liability and if held to be breached, the insurance company would be exonerated from liability, even though there was no showing that it was in fact prejudiced by the failure to receive timely notice.' " (233 F.2d 630, 634, quoting 21 Ins. Counsel J. 131 (1954).)

In affirming the grant of summary judgment, the *Greyhound* court found that the condition was stated in clear and unambiguous language and imposed a duty of notice upon the insured where a happening was such that the assured should have anticipated that it might develop in a claim of an amount involving excess liability. The court then went on to state that the insured must exercise due diligence and pursue such procedures as would inform it of the occurrence and nature of the accident as well as the amount of the claim asserted by reason thereof. As the insured failed to inquire into the contents of the declaration or the amended declaration, it was estopped from saying that it did not know of the seriousness of the claim. In light thereof, the notice was untimely as a matter of law.

While the language employed in the *Greyhound* excess policy narrowed the definition of the term "accident" to only those events allegedly causing bodily injury which "may" involve excess liability, the phrasing of the condition as a whole is strikingly similar to that appearing

in the primary policies reviewed in the Illinois cases cited above, in that notice of an occurrence is absolutely required upon the mere happening of a defined event. (*E.g., Farmers Automobile Insurance Association v. Hamilton; INA Insurance Co. v. City of Chicago; City of Chicago v. United States Fire Insurance Co.*) Generally, where judicial construction of conditions inserted in insurance policies by insurers for their benefit is permissible, such conditions are construed most favorably to the insured. (*Hoffman v. Illinois National Casualty Co.* (7th Cir. 1947), 159 F.2d 564.) To this end, the absolute language of notice conditions in primary policies has been construed to impose the duty to notify where the insured knew or through the exercise of due diligence should have known of the happening of the defined event. (*E.g., Farmers Automobile Insurance Association v. Hamilton; Kenworthy v. Bituminous Casualty Corp.; H. H. Hall Construction Co. v. Employers Mutual Liability Insurance Co.; International Harvester Co. v. Continental Casualty Co.*) Therefore, to the extent that the *Greyhound* court reviewed the duties imposed upon the insured under a notice provision which was stated in the absolute, its imposition of the duty upon the insured to make inquiry is consonant with Illinois law.

The pertinent portion of the language in *Greyhound* found by the court to be absolute was "[u]pon the occurrence of any accident which may involve liability on the part of the company." In the instant cause, however, the language chosen by Midland, rather than being absolute in character, states:

> "Whenever the Insured *has information* from which the Insured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Insured should be held liable, is likely to involve this policy, notice shall be sent to [Midland] as soon as practicable * * *." (Emphasis added.)

It appears to us that the emphasized language clearly and unambiguously refers to the actual knowledge possessed by the insured. We would note further that this view is not inconsistent with that expressed in *Imparato Stevedoring Corp. v. Lloyd's Underwriters* (1967), 27 App. Div. 2d 827, 278 N.Y.S.2d 153—a decision relied upon by Midland. There, the notice provision in an excess insurance policy read:

> " 'Assured upon knowledge of any accident or occurrence likely to give rise to a claim hereunder shall give immediate written notice thereof.' " (27 App. Div. 2d 827, 828, 278 N.Y.S.2d 153, 154.)

As the complaint served upon the assured in that case imparted actual knowledge of the nature of the claim and because the amount of damages sought exceeded the primary coverage, the reviewing court held that having such knowledge the insured knew or should have known of the

likelihood that the accident would give rise to a claim under the excess policy.

■■ Here, the record reveals that actual knowledge of the ad damnum was not disclosed by the Brownlee summons and that the summons itself was insufficient, in itself, to raise the specter of excess liability. Indeed, as stated above, Midland tacitly admits the insufficiency of the summons to impart actual notice of the seriousness of the Brownlee claim. Under the circumstances, Western had insufficient information with which to evaluate the likeliness of excess liability until the June 23 letter and enclosed copies of the interlocutory and final default judgments disclosed the nature and extent of the claim. Accordingly, we believe that the trial court erred by entering summary judgment in favor of Midland, as it was not entitled to judgment as a matter of law. *Chrysler Credit Corp. v. M. C. R. Leasing Co.* (1969), 118 Ill. App. 2d 111, 254 N.E.2d 153; *J. J. Brown Co. v. J. L. Simmons Co.* (1954), 2 Ill. App. 2d 132, 118 N.E.2d 781.

In so holding, we are not unmindful of the prejudice suffered by Midland as a result of post-judgment notice and of the negligent conduct of Western in this matter; however, we cannot infuse the requirement of rendering notice upon the reasonable conclusion of policy coverage based upon information the insured could have acquired through the exercise of due diligence where the policy's notice provision is not subject to such judicial construction. *Groth v. Standard Accident Insurance Co.*

For the reasons stated, the judgment appealed from is reversed and the cause remanded for further proceedings not inconsistent with the views expressed in this opinion.

Reversed and remanded.

LORENZ and WILSON, JJ., concur.