SISTERS OF DIVINE PROVIDENCE, d/b/a St. Elizabeth Medical Center, Plaintiff and Counterdefendant-Appellee, *v.* INTERSTATE FIRE & CASUALTY COMPANY, Defendant and Counterplaintiff-Appellant.

Fifth District   No. 82—642

Opinion filed August 9, 1983.—Rehearing denied September 7, 1983.

French, Rogers, Kezelis & Kominiarek, P.C., of Chicago, and Wagner, Bertrand, Bauman & Schmieder, of Belleville (Richard G. French, of counsel), for appellant.

Stephen W. Thomson, of Reed, Armstrong, Gorman & Coffey, of Edwardsville, for appellee.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

Defendant, Interstate Fire & Casualty Company (Interstate), appeals from a grant of summary judgment in favor of plaintiffs, The Sisters of Divine Providence, d/b/a St. Elizabeth Medical Center (St. Elizabeth's). The question presented for review is whether St. Elizabeth's complied with a condition precedent contained in its excess malpractice insurance policy which required it to notify Interstate of an underlying lawsuit as soon as practicable, or within a reasonable time. For the following reasons, we reverse the decision of the trial court and enter summary judgment in favor of Interstate.

During the period from January 31, 1975, to January 31, 1976, St.

Elizabeth's was insured under a policy of insurance with Interstate, policy No. 155—U-021569. The policy provided coverage for malpractice in the amount of $5,000,000 per occurrence as excess coverage over $200,000. The hospital was self-insured for the first $100,000 and insured by INA for the second $100,000.

On April 7, 1977, a lawsuit by Charles Thomas White, a minor, was instituted by his parents against St. Elizabeth's and the attending physician. The two-count complaint alleged that on November 22, 1975, the hospital was negligent in its treatment of the child and that, as a result of the negligence, the child suffered severe and irreversible brain damage. The complaint sought damages in excess of $15,000 for each count.

The summons and complaint were served upon the hospital and its administrators. The assistant administrator sent the papers to the hospital's own defense counsel. Copies were also sent to the secondary carrier, INA. Discovery was initiated soon thereafter, and depositions were taken as early as August 10, 1977. However, notice of the lawsuit and the possibility of a claim was not conveyed to Interstate until April 25, 1980, by a letter from the hospital's insurance broker. The case went to trial on May 27, 1980, and was settled the next day. The settlement agreement included a payment by St. Elizabeth's of $250,000 over and above its self-insured limits and a payment by Interstate of $350,000. It was stipulated between the hospital and Interstate at the time of the settlement that these payments would in no way affect the rights of the hospital and Interstate between themselves.

St. Elizabeth's thereafter filed suit against Interstate for the $250,000 it paid in excess of the self-insured amount. Interstate counterclaimed for the $350,000 it contributed. Both parties filed motions for summary judgment. The circuit court of Madison County held in favor of the hospital and entered the summary judgment from which this appeal arose.

Interstate's position on appeal is that the hospital as a matter of law, did not give the required notice of the claim by Charles White as soon as practicable, or within a reasonable time. The notice provision in the excess policy between Interstate and St. Elizabeth's reads as follows:

> "F. Notice of occurrence:
> Whenever the insured has information from which the insured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the insured would be held liable, is likely to involve this policy,

notice shall be given by or on behalf of the insured to the company as soon as practicable, provided, however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this policy but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims."

Our review of the law indicates only one reported case in Illinois which involves an excess insurance policy. (*Brownlee v. Western Chain Co.* (1979), 74 Ill. App. 3d 804, 393 N.E.2d 515.) There, the court construed language in a notice clause which is identical to the language in the policy between Interstate and St. Elizabeth's. The court declared that the notice clause imposed upon the insured the duty to notify the carrier once the insured possessed "actual knowledge" from which it could reasonably conclude that an accident would give rise to a claim under the excess policy. (*Brownlee v. Western Chain Co.* (1979), 74 Ill. App. 3d 804, 811-12.) Because the insured in that case, Western Chain Company, had no actual knowledge of the amount of the claim, the court reversed summary judgment which had been entered in favor of the insurer.

In the present set of circumstances, however, it is apparent that St. Elizabeth's had actual knowledge that the White claim could exceed $200,000. Exhibits attached to the motions for summary judgment show this communication from the hospital counsel to the hospital, dated June 2, 1977:

"As you can see, it appears that Charles White did contract meningitis and has suffered severe brain damage as a result."

And, following depositions taken on August 10, 1977, the hospital's attorney wrote on August 12 that "It should be noted that this case is extremely dangerous considering the injuries." The injuries were described by the child's father at the 1977 deposition. He reported that the child could not

"sit up, can't roll over, everything has to be done for him. He can't even crawl. Can't hold anything in his hands, has to be fed, all he can eat is regular baby food, take water, liquid milk through a syringe. [Dr.] Regent said the damage is very serious and Tommy will never be any better."

Another communication to the hospital administrator, dated four months later, referred to the suit as an "extremely serious case considering the damages and liability." The following entry appeared in a letter dated February 10, 1978: "The damages which include brain damage are extensive." Similarly, a letter from defense counsel to the hospital dated March 23, 1979, advised that: "This case should still be

viewed with a great deal of seriousness considering the catastrophic injuries suffered by the baby." In fact, the counsel for St. Elizabeth's testified at a deposition regarding his assessment of the injuries:

"Q. ***. How long prior to the date of that letter had you considered the damages to be catastrophic?

A. I think anything in excess of a million dollars is catastrophic. Probably even a lot less than that would be catastrophic, depending on the circumstances.

Q. All right. Are you telling me then that you had considered the damages to be catastrophic since about 1978 or early '79?

A. Well, it would depend on the circumstances. I indicated earlier that as early as those dates I was under the impression that the verdict if entered against the hospital, although we did not feel it would be, could exceed a million dollars."

Finally, in a letter dated November 5, 1979, the counsel wrote to the hospital:

"This child is severely mentally and physically retarded. It was Dr. Regent's opinion that the child will never be able to care for himself and will require extensive custodial care for the rest of his life."

Thus, the plaintiff was aware in 1978 or 1979 that the child's injuries were "catastrophic" and that an unfavorable verdict could exceed $1,000,000. The court in *Brownlee* cited with approval the rule that an insured's duty to notify its excess carrier is a condition precedent to the carrier's liability under the excess policy. (*Brownlee v. Western Chain Co.* (1979), 74 Ill. App. 3d 804, 810.) St. Elizabeth's did not contact Interstate until April 22, 1980, more than three years after the suit was filed and only one month before trial. The record discloses no acceptable reason for the delay. Thus, the failure to notify Interstate as soon as practicable constitutes a breach of the insurance contract which relieves Interstate of liability.

■ Plaintiff has relied on the supreme court case *M.F.A. Mutual Insurance Co. v. Cheek* (1977), 66 Ill. 2d 492, 363 N.E.2d 809, and the rule formulated therein that breach of an insurance policy clause will not relieve the company of its liability unless the company is substantially prejudiced. It argues that Interstate should not be relieved of liability under its contract with St. Elizabeth's because it was not prejudiced by the late notice given by St. Elizabeth's. Our research confirms that the rule in *Cheek* has no application in the present case. There, the court interpreted a cooperation clause in an automobile insurance policy. (*M.F.A. Mutual Insurance Co. v. Cheek* (1977), 66 Ill.

2d 492, 500.) Reviewing courts since *Cheek* have made it clear that the underlying considerations relevant in *Cheek* are not necessarily present in cases involving the breach of a notice clause. (*Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co.* (1979), 70 Ill. App. 3d 296, 302, 388 N.E.2d 253.) Thus prejudice, or the lack thereof, is not the factor which determines coverage. Instead, courts have consistently held that the determination is based upon a standard of reasonableness, *i.e.*, did the insured give notice as soon as it was practicable for him to do so. (*McFarlane v. Merit Insurance Co.* (1978), 58 Ill. App. 3d 616, 619, 374 N.E.2d 951.) As was stated in *Illinois Valley Minerals Corp.*, "prejudice to the insurer is but one factor which may be taken into consideration in making the determination as to the reasonableness of the notice in any given case." (*Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co.* (1979), 70 Ill. App. 3d 296, 302.) This principle was recently applied in *United States Fidelity & Guaranty Co. v. Maren Engineering Corp.* (1980), 82 Ill. App. 3d 894, 403 N.E.2d 508, where the court noted that while "an absence of actual prejudice to the insurer may be a factor to be considered in determining the propriety of the notice and the diligence of the insured, it does not conclusively establish the timeliness of the notice." (*United States Fidelity & Guaranty Co. v. Maren Engineering Corp.* (1980), 82 Ill. App. 3d 894, 898, 403 N.E.2d 508.) It agreed with prior cases that "the issue in a case involving late notice is not whether the insurer has been prejudiced, but rather, whether reasonable notice has been given." (*United States Fidelity & Guaranty Co. v. Maren Engineering Corp.* (1980), 82 Ill. App. 3d 894, 898.) Although the cited cases involve primary carriers, the same principles should apply to excess carriers as well. Consequently, plaintiff's argument that Interstate must establish prejudice in order to be relieved of liability under the policy is without merit.

■ In conclusion, the record discloses that the insured did not exercise diligence in notifying its excess carrier. Further, there was no justifiable excuse for the delay. (See *Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co.* (1979), 70 Ill. App. 3d 296, 301.) Since the facts in the present case are undisputed, the determination of whether St. Elizabeth's gave notice to Interstate as soon as practicable is a question of law. (*INA Insurance Co. v. City of Chicago* (1978), 62 Ill. App. 3d 80, 83, 379 N.E.2d 34.) We hold that, as a matter of law, St. Elizabeth's has failed to comply with the notice provision contained in its policy. The provision is a "valid [prerequisite] to coverage" (*INA Insurance Co. v. City of Chicago* (1978), 62 Ill. App. 3d 80, 83), and thus it was error for the court to award summary judgment

to St. Elizabeth's.

Accordingly, the summary judgment of the circuit court of Madison County is reversed. In addition, finding that there is no genuine issue of material fact and that Interstate is entitled to judgment as a matter of law on its counterclaim, we hereby enter summary judgment in favor of Interstate Fire & Casualty Company and against Sisters of Divine Providence, d/b/a St. Elizabeth Medical Center, an Illinois Corporation, in the amount of $350,000 and costs of suit.

Reversed.

KASSERMAN and WELCH, JJ., concur.