In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3031

Commercial Underwriters Insurance Company,

Plaintiff-Appellant,

v.

Aires Environmental Services, Ltd., n/k/a
Aires Consulting Group, Inc.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 2129--Ronald A. Guzman, Judge.

Argued January 22, 2001--Decided July 30, 2001


  Before Bauer, Kanne, and Evans, Circuit
Judges.

  Kanne, Circuit Judge.  Defendant-
appellee, Aires Environmental Services,
Ltd., provides environmental, health, and
safety consulting services to companies
in the manufacturing industry. On
November 17, 1997, Aires notified its
general liability carrier, plaintiff-
appellant Commercial Underwriters
Insurance Company (CUIC), that it had
been named as a defendant in a lawsuit
involving an industrial accident. After
investigating the claim, CUIC denied
coverage, alleging that Aires had
breached the insurance contract by
failing to give CUIC timely notice of the
occurrence that gave rise to the claim.
CUIC filed a diversity suit in federal
district court seeking a declaratory
judgment that it had neither a duty to
defend nor a duty to indemnify Aires in
the underlying lawsuit. On cross-motions
for summary judgment, the district court
found that Aires' delay in notifying CUIC
of the occurrence was reasonable and
granted Aires' motion for summary
judgment on the issue of CUIC's duty to
defend. Because we agree with the
district court that Aires' notice to CUIC
was timely under the circumstances, we
affirm the judgment of the district
court.

I.  History

   On November 9, 1995, a serious accident at Reynolds Metals Company in McCook, Illinois claimed the lives of three workers and resulted in three other workers being seriously injured. The accident occurred when, in the course of excavating a pit in the area of the Reynolds facility known as cast house station number three, a compressed air pump line was mistakenly connected to an unlabeled source of compressed argon rather than a source of atmospheric air. Because argon is heavier than oxygen, the introduction of argon into the excavation pit displaced the breathable oxygen such that the workers in and near the pit began to suffocate and collapse.

   One of the people called on to assist in the rescue attempt at cast house station number three was Aires employee Joseph DeLucia. Approximately one year before the accident, Aires entered into an agreement to provide environmental and safety consulting services to Reynolds. Aires agreed to assign DeLucia, an industrial hygienist, to work regularly at Reynolds' McCook plant under the direction and supervision of Reynolds safety director, J.B. Haney. Under the terms of the agreement, DeLucia's schedule, as well as his assignments, were controlled solely by Reynolds; Aires did not provide any supervision or direction to DeLucia while he was assigned to Reynolds' plant. DeLucia provided weekly reports of his activities and findings to Haney and forwarded them to Aires for billing purposes. His duties at Reynolds included safety inspections, safety training, air testing, and pipe labeling. Although DeLucia had conducted asbestos and air testing in the cast house prior to the accident, neither he nor any Aires employee had performed any other work at cast house station number three prior to the accident.

   Several hours after he was called upon to help rescue workers, DeLucia informed Aires management of the accident at Reynolds. Initially, Reynolds asked Aires' senior industrial hygienist, Dennis Cesarotti, to come to the plant to help investigate the accident, but Reynolds later decided that it would conduct the investigation internally. The Occupational Safety and Health Agency

(OSHA) also conducted an investigation of the accident and issued several citations to Reynolds for failing to properly label compressed gas lines. Although Aires was not allowed to participate directly in the accident investigation, Aires was privy to the investigation results because Reynolds enlisted Cesarotti's help in developing confined space training and safety programs aimed at preventing similar accidents.

On December 8, 1995, the first of several accident-related lawsuits was filed against Reynolds. Because DeLucia was to be deposed in this litigation, Aires contacted its attorney to inquire whether DeLucia needed representation at his deposition. Aires' attorney advised that DeLucia did not need representation because Aires was not a party to the lawsuit. Nearly two years later, in November 1997, however, Aires became a party to several lawsuits when the underlying plaintiffs amended their complaints to add Aires as a defendant. The suits alleged that Aires was liable for the accident injuries because it failed to fulfill its obligation to ensure proper labeling of gas lines.

On November 17, 1997, Aires notified its professional liability carrier, Steadfast Insurance Company, as well as its general liability carrier, CUIC, of the pending lawsuit. Steadfast agreed to defend Aires under a reservation of rights and retained a law firm to defend Aires. CUIC, on the other hand, did not respond to the notification until April 17, 1998, at which point it requested more information about the claim and indicated that it was reserving its rights. On June 5, 1998, CUIC tentatively agreed to split defense costs with Steadfast pending investigation of the claim. After conducting the investigation, however, CUIC determined that the two-year delay between the accident and Aires' notification constituted a breach of a provision of the insurance policy that required Aires to give notice "as soon as practicable" of any occurrence that might give rise to a claim. Consequently, CUIC advised Aires that it was denying the claim, withdrawing from its interim participation in the defense, and filing for a declaratory judgment against Aires.

On March 31, 1999, CUIC filed a

complaint in district court seeking a declaratory judgment that it had neither a duty to defend nor a duty to indemnify Aires in any action arising out of the accident at Reynolds. CUIC and Aires filed cross-motions for summary judgment. The district court found that Aires' delay in notifying CUIC of the occurrence was reasonable in light of the surrounding facts and circumstances and denied CUIC's motion for summary judgment. The district court granted Aires' cross-motion for summary judgment on the issue of CUIC's duty to defend, but, because the underlying lawsuits were still pending at that time, the district court did not reach the issue of CUIC's duty to indemnify Aires. The court found that the indemnification issue was not ripe for review and that a determination of CUIC's duties in that regard could potentially prejudice the parties in the underlying action.

On appeal, CUIC argues that Aires should have and did anticipate that it would be sued in connection with the Reynolds accident as soon as December 1995, and therefore it was error for the district court to find that Aires had not breached its duty to provide notice of potential claims "as soon as practicable." Thus, CUIC asks that we reverse the district court's grant of summary judgment to Aires and enter summary judgment in favor of CUIC.

II.  Analysis

A.  Standard of Review

We review the district court's grant of summary judgment de novo, construing all facts in favor of the non-moving party. See Wolf v. N.W. Ind. Symphony Soc., 250 F.3d 1136, 1141 (7th Cir. 2001). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party. See Wolf, 250 F.3d at 1141.

B. Timeliness of Notice

Aires had a contractual duty to give notice to CUIC "as soon as practicable of any occurrence or an offense that may result in a claim." Notice provisions such as the one at issue in this case are intended to ensure that the insurer will not be prejudiced in its ability to investigate and defend claims against its insureds. See Amer. Country Ins. v. Efficient Constr. Corp., 587 N.E.2d 1073, 1075 (Ill. App. Ct. 1992). Therefore, Illinois law provides that the failure to fulfill a condition precedent that requires timely notice of potential claims relieves the insurer of any duty to defend or indemnify the insured. See Indus. Coatings Group, Inc. v. Amer. Motorists Ins. Co., 658 N.E.2d 1338, 1343 (Ill. App. Ct. 1995).

In general, the duty to notify the insurer of an occurrence arises at the point in time that it would appear "to a reasonably prudent person that a claim potentially covered by the policy may be brought against the insured." Id. (internal quotation omitted). Although we may consider lack of prejudice to the insurer as one factor in determining whether notice was timely, an insurer need not prove that it was prejudiced in order to deny coverage. See Twin City Fire Ins. Co. v. Old World Trading Co., 639 N.E.2d 584, 589 (Ill. App. Ct. 1993); Sisters of Divine Providence v. Interstate Fire & Cas. Co., 453 N.E.2d 36, 38-39 (Ill. App. Ct. 1983). Conversely, "[a] lengthy passage of time is not an absolute bar to coverage provided that the insured has a justifiable excuse for the delay." Sonoco Bldgs., Inc. v. Am. Home Assurance Co., 877 F.2d 1350, 1356 (7th Cir. 1989) (internal quotation omitted); see, e.g., Atlanta Int'l Ins. Co. v. Checker Taxi Co., 574 N.E.2d 22, 26 (Ill. App. Ct. 1991) (holding that a two-year delay between the accident and notice to the excess insurance company was not unreasonable); Barrington Consol. High Sch. v. Amer. Ins. Co., 319 N.E.2d 25, 27-28 (Ill. 1974) (holding that a four-year delay in notice was reasonable where the insured had no expectation of suit). Therefore, we must consider all of the facts and circumstances surrounding a particular case and apply a standard of

reasonableness in order to determine whether notice in a particular case was timely. See Twin City Fire Ins. Co., 639 N.E.2d at 588.

CUIC argues that it was unreasonable for Aires to wait two years to notify CUIC of the accident at Reynolds because Aires had immediate knowledge of the accident as well as the lawsuits filed against Reynolds. Aires does not deny knowledge of the accident or the lawsuits; rather, Aires maintains that it never anticipated that it would be sued in connection with the accident at Reynolds. Aires contends that this belief was reasonable because neither DeLucia nor any other Aires employee had performed work near the accident site that could reasonably be thought to have contributed to the accident. CUIC responds that it is irrelevant whether Aires believed that its employees' conduct would result in liability, asserting that the important issue is whether a claim was likely to be filed.

CUIC is correct that the focus of our inquiry into the reasonableness of Aires' conduct is "not the appearance that the insured may be liable," but rather the appearance that a claim may be brought against the insured. Amer. Country Ins., 587 N.E.2d at 1075. It is impossible, however, to completely divorce these two concepts when attempting to determine if a reasonable person would anticipate suit because the probability that a suit will be filed is a function of how successful that suit is likely to be. While an insured who has reason to know that a suit is likely to be filed (or has been filed) is not entitled to be excused from late notice, it may be reasonable in some situations for an insured not to expect suit if they are not directly involved in an accident and have no reason to think that they may be liable.

Most of the cases cited in support of CUIC's argument that Aires' notice was untimely involve situations where the insured waited a significant time before providing notice to its insurer even after suit had been filed. See, e.g., Indus. Coatings Group, Inc., 658 N.E.2d 1338 (finding that notice to the insurer fourteen months after the United States Environmental Protection Agency notified appellant that it would be held liable

for clean-up costs was untimely); Twin City Fire Ins. Co., 639 N.E.2d 584 (holding that notice was untimely where suit was filed in July 1986 and notice was not provided to insurer until April 1989); Sisters of Divine Providence, 453 N.E.2d 36 (finding that the duty to notify was breached where a lawsuit was filed in April 1977 and notice was not conveyed to the insurer until April 1980). That is not the case here, though, because Aires notified its insurance carriers as soon as the complaints were filed against it.

The question before us, then, is whether Aires turned a blind eye to the risk of a legitimate action, or simply failed to anticipate that prospective plaintiffs would take a shotgun approach to naming defendants. CUIC maintains that it was the former--that a reasonably prudent person in Aires' position would have expected suit at the time of the accident, or at the latest, at the time suit was filed against Reynolds. CUIC claims that, at the time of the accident, it should have been foreseeable to Aires management--who had a high level of sophistication in matters involving risk management and safety litigation--that Aires was likely to be named as a defendant because of the seriousness of the accident, DeLucia's involvement in the labeling of compressed gas lines, and DeLucia's position as a safety advisor at Reynolds. We disagree.

First of all, the fact that the accident resulted in fatalities, in itself, is not sufficient evidence that Aires should have been on notice that it might be sued because neither DeLucia nor any other Aires employee was directly involved with the accident at cast house station number three. The only activity that Aires ever performed in cast house station number three was testing for asbestos and lead-- and it is uncontroverted that these substances were not involved in the accident. Aires employees did perform air testing in other areas of the cast house, but not in cast house station number three. We are also unconvinced that DeLucia's involvement with the labeling of compressed gas lines should have put Aires on notice that it was likely to be sued. Although DeLucia prepared labels for gas lines, he was never responsible for actually placing the labels on the

appropriate lines--in fact he was not permitted to place labels on the gas lines because of Reynolds' agreement with its unionized labor force. Similarly, we are unable to accept that DeLucia's mere presence at Reynolds as an on-site industrial hygienist means that Aires should have expected to be sued over any accident that occurred in the plant. While DeLucia's position involved making safety recommendations and performing tests, his activities were performed only at the direction of Reynolds safety director, J.B. Haney. DeLucia was not in charge of overall safety for the entire facility, and as such, would not expect to be held responsible for each and every accident that occurred there.

Nor are we convinced that the expertise of Aires management in safety litigation suggests that its conclusion that it was unlikely to be sued was unreasonable. The implicit premise of this argument is that Aires, with its expertise in safety litigation, was better able to predict the likelihood of suit than a similarly-situated entity. This premise is most likely correct. However, it does not necessarily follow that the fact that Aires incorrectly predicted that it would not be sued means that its determination was unreasonable. As the district court pointed out, Aires' expertise in riskmanagement makes it more, not less, likely that Aires' assessment of the risk of suit was reasonable. See Commercial Underwriters Ins. Co. v. Aires Envtl. Serv. Ltd., No. 99 C 2129, 2000 WL 1053960, at *4 (N.D. Ill. July 31, 2000). The fact that the plaintiffs did not amend their complaints to add Aires as a party until nearly two years after Reynolds was named also gives credence to Aires' belief that it was not likely to be a target of the lawsuit. Therefore, given the limited nature of the duties of Aires employees near the site of the accident and the fact that DeLucia was not involved in the processes that contributed to the accident, we are unwilling to say that it was unreasonable for Aires to expect that they would not be sued.

According to CUIC, even if it was reasonable for Aires not to anticipate legal action at the time of the accident, it should have expected suit when plaintiffs sued Reynolds and began

scrutinizing DeLucia's activities at Reynolds. To evaluate this claim, we must determine whether anything about the suit against Reynolds or plaintiffs' scrutiny of DeLucia should have signaled to Aires that the plaintiffs were now targeting Aires as opposed to simply gathering information about what actually happened in cast house number three leading up to the accident. CUIC's evidence certainly suggests that it would have been unreasonable for Aires to think that Reynolds was unlikely to be sued, but the likelihood of suit against Reynolds is not at issue here. Up until the point at which plaintiffs added Aires as a defendant, CUIC can point to nothing specific about plaintiffs' underlying investigation that suggests that Aires should have known that plaintiffs were attempting to make a case against Aires. When viewed through the lens of Aires' limited role at cast house three, we find that it was reasonable for Aires to believe that plaintiffs' efforts were aimed at gathering general information about safety procedures at Reynolds.

CUIC argues that Aires' delay in notice--even if objectively reasonable--was nonetheless untimely because Aires subjectively believed that it was likely to be sued in connection with the accident at Reynolds. This contention is primarily based on the deposition testimony of Aires president Dennis Cesarotti. At his deposition on January 22, 1999, Cesarotti made several statements that suggested that he and other Aires principals had discussed the possibility that Aires might be sued in connection with the Reynolds accident./1 Subsequently, Cesarotti attempted to correct his deposition testimony by submitting a supplemental affidavit in which he claimed that he was mistaken about several of his prior answers. In the supplemental affidavit, Cesarotti specifically noted that he "never was a party to a conversation in which anyone implied that Aires would be named as a defendant in the lawsuits that arose out of the November 9, 1995 accident at the Reynolds plant in McCook, Illinois." Cesarotti Aff. para. 15. Cesarotti also asserted that CUIC's attorney did not disclose that she was coverage counsel conducting an investigation for the purpose of denying coverage; he alleges that it was his belief that his statement

was going to be solely for the purpose of assisting Aires' defense in the underlying action.

Our cases provide that, in general, parties may not "patch-up potentially damaging deposition testimony" with a contradictory affidavit. Maldonado v. U.S. Bank, 186 F.3d 759, 769 (7th Cir. 1999). We will, however, accept a contradictory supplemental affidavit if the party offers a suitable explanation such as "confusion, mistake, or lapse in memory [ ]for the discrepancy." Id. Here, we believe that Cesarotti has provided a credible explanation for his mistaken testimony. Cesarotti was not responsible for, and did not deal with, insurance matters for Aires, and as such, he was not prepared to answer insurance-related questions. Cesarotti's readiness to testify to matters on which he was ill-informed is explained by his belief that the intention of the CUIC attorney conducting the deposition was only to defend Aires' interests. It is undisputed that Cesarotti testified incorrectly to several matters at his deposition--for example, he stated that Aires had notified its professional liability carrier, Steadfast, in advance of its notification to CUIC when, in fact, the two carriers had received notice at the same time. Moreover, the validity of Cesarotti's supplemental affidavit is substantiated by the testimony of Geoffrey Bacci, the individual responsible for Aires' insurance matters, as well as by Aires' post-accident conduct. Bacci has consistently maintained that he never considered it a possibility that Aires would be sued in connection with the Reynolds accident. Aires did not contact its attorney with respect to the claim except to inquire whether DeLucia needed representation at his deposition, nor did it contact its professional liability carrier until after the suit had been filed. For all of these reasons, we are unwilling to accept CUIC's contention that Cesarotti's initial deposition testimony constitutes an admission by Aires that it expected to be sued as a result of the Reynolds accident.

III.  Conclusion

Considering Aires' limited involvement in cast house station number three, and

Aires' prompt notice to CUIC as soon as suit was filed, we find that Aires acted reasonably in waiting to give notice to CUIC until a claim was filed against it. Therefore, we AFFIRM the district court's grant of summary judgment on the issue of CUIC's duty to defend and REMAND for a determination of CUIC's duty to indemnify.

FOOTNOTE

/1 In answer to the question "[d]id you ever have a discussion internal to Aires as to whether or not Aires might be sued" in connection with the accident at Reynolds, Cesarotti replied, "[o]h yeah." Cesarotti Dep. at 48. He also testified that Aires had given notice to its professional liability carrier (Steadfast) and that he and his partner were "somewhat sarcastically counting the days before the statute would be up and they wouldn't be able to file against us." Id. at 54.