John D. ZANDER, Doctor,
Plaintiff–Appellee,

v.

CONTINENTAL CASUALTY
COMPANY, Defendant–
Appellant.

No. 02–2696.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 28, 2003.

Decided March 24, 2003.

■■■■■■■■■■■■

Before BAUER, POSNER, and MANION, Circuit Judges.

## ORDER

The district court granted summary judgment in John Zander's favor, holding as a matter of law that Continental Casualty Company was obliged to pay Zander partial disability benefits under its policy of disability insurance. Continental appeals, arguing that the court below erred in concluding that Zander became disabled after the effective date of Continental's policy and that a pre-existing conditions clause applied to Zander. Continental also claims that the district court erred by concluding that Continental had conceded that Zander was disabled. We affirm.

## I.

John Zander was a colorectal surgeon and partner in the Springfield Clinic, located in Springfield, Illinois. In August 1996, he developed "posterior interosseus neuropathy," which caused pain in his right arm and hands. On the advice of his doctor, Zander decreased his working hours in November 1996. At first, Zander did not experience a significant decrease in pay: under a complex system of compensation at the clinic, a partner's bi-monthly compensation was based at least partly on his history of productivity. Zander's pay remained relatively steady between when he cut back his working hours in November 1996 until he received his paycheck of January 30, 1998. At that point, his bi-monthly salary decreased to less than 60% of what it had been before his disability.

Prudential Insurance Company was the clinic's insurance carrier when Zander first applied for partial disability benefits in December 1996. Prudential approved his claim and began paying benefits. On February 1, 1997, the clinic switched carriers to Continental and the Continental coverage became active. Continental's policy, like Prudential's before it, was an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* Zander continued to receive benefits until Prudential withdrew its approval on September 24, 1998, claiming that Zander's loss did not occur until after the effective date of the Continental policy. Zander then filed a claim with Continental, which denied benefits on the ground that Zander's disability and corresponding drop in earnings began before February 1, 1997, when Prudential's policy was in effect.

Thus whipsawed, Zander filed suit in the district court against Prudential, Continental, the clinic, and his partners. In relevant part, the district court granted Prudential's motion for summary judgment against Zander and Zander's motion for summary judgment against Continental.[1] The district court reasoned that Continental had to provide benefits because: (1) under the policy, coverage was triggered when "Zander's earnings fell below 80% of his predisability earnings" because of disability; (2) Continental admitted that Zander was disabled; and (3) it was undisputed that Zander's earnings did not drop below the 80% level until after February 1, 1997. The district court also predicated its ruling on the alternate ground that Continental's Pre–Existing Condition Continuity of Coverage Guarantee ("Guaran-

---

1. The district court entered final judgment disposing of all parties' claims on June 7, 2002.

tee") mandated coverage. Continental appeals.

## II.

Because this is a case involving a benefits determination under ERISA, and because the Continental policy contains no language granting the plan administrator discretionary authority to interpret policy language or determine eligibility for benefits, the district court's review of Continental's decision to deny coverage was plenary. *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 330–33 (7th Cir.2000). Our review, in turn, of the district court's grant of summary judgment is *de novo*, construing all facts in favor of Continental, the nonmoving party. *Commercial Underwriters Ins. Co. v. Aires Envtl. Servs., Ltd.*, 259 F.3d 792, 795 (7th Cir.2001). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Thus, "[s]ummary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party." *Commercial Underwriters*, 259 F.3d at 795.

■ We first address Continental's contention that the district court erred in concluding that Continental stipulated to Zander's disability. The district court held that Continental stipulated to Zander's disability on the basis of paragraph 19 of Continental's Statement of Undisputed Facts. Paragraph 19 states: "On January 14, 1999, Continental Casualty sent a letter to Plaintiff denying his application for disability benefits *on the basis that he became disabled* prior to the February 1, 1997 effective date of the Continental Casualty policy" (emphasis added). Although

Continental concedes that it worded this stipulation "inartfully," it argues that the district court erred because Continental "never determined whether Zander's condition was disabling." We reject Continental's position because paragraph 19 says, without qualification, that Zander had a disability. Continental may now regret that judicial admission, but an admission it was, and Continental it is not entitled to controvert it on appeal. *Keller v. United States*, 58 F.3d 1194, 1198 n. 8 (7th Cir.1995). There is no dispute that Zander is disabled now, so the purpose of the "admission" was to insist that Zander's disability occurred on Prudential's watch and not later, when Continental was on the hook.

■ We now turn to Continental's argument that the district court erred as a matter of law in construing the policy to trigger coverage when Zander's pay decreased below 80%, as opposed to when Zander suffered the injury that eventually caused his pay to drop. The relevant language in the policy states that eligibility for partial benefits begins when the participant is "currently earning less than 80% per month of [his] pre-disability earnings due to ... injury or sickness." The "currently earning less than 80%" proviso is the bone of contention; if Zander met that element before February 1, 1997, Continental would not be liable. The district court reasoned, and Zander argues, that he did not meet that criterion until after February 1, 1997, when, more than one year after his work level decreased, Zander first began to get paid less than 80% of his pre-disability earnings. Continental contends that this position is wrong because it conflates "earnings" and "income." In Continental's view, Zander was "earning" less than 80% of his predisability amount in December 1996, when the Prudential coverage was in effect and Zander

began the reduced work-schedule that led his income to drop beginning with the paycheck of January 30, 1998.

In line with this argument, Continental insists that even though Zander's monthly income did not actually fall below 80% of his pre-disability earnings until January 1998, the disability that caused the eventual decrease occurred in or before December 1996, before Continental's policy went into effect in February 1997. Continental's theory, not backed up in the record, is that in December 1996 Zander had already earned the income received in 1997. Thus, it asserts, the monthly income Zander received between December 1996 and January 1998 was in effect payments deferred for work he had performed before he became disabled. This unusual theory fails for at least two reasons. First, there is no record evidence to support Continental's deferred payment claim. Perhaps there was a formula that later payments were based on past performance and revenue volume, but without specific documentation such speculation will not prevail. The partnership agreement includes a complicated payment formula based on earlier performance, but at oral argument, Zander's attorney stated that a partner had to be currently working for the formula to apply. With no specific formula in the record that applies to Zander, it cannot apply here.

Second, and more pertinent to the legal issue before us, the terms of Continental's contract dictate that Zander must receive the benefits under its plan. It is well established that "[a]n ERISA plan is a contract." *Herzberger*, 205 F.3d at 330. In construing an insurance contract governed by ERISA, our function is to interpret the policy "in an ordinary and popular sense as would a person of average intelligence and experience." *Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 308

(7th Cir.1992) (internal quotation and brackets omitted). Although we may not create an ambiguity where there is none, we strictly construe ambiguous terms of the contract in the insured's favor. *Id.*

The dispositive contractual language is that which holds that eligibility for partial benefits begins when the participant is "currently earning less than 80% per month of [his] pre-disability earnings due to ... injury or sickness." The question Continental presents is whether, under the terms of the contract, Zander began "earning" less than 80% of his pre-disability amount after February 1, 1997. The verb "earn," as popularly defined, has several definitions. *See Webster's Third New International Dictionary* 714 (1981). One of those definitions, "to receive as equitable return for work done or services rendered: have accredited to one as remuneration," describes the receipt of income and would support the view of both Zander and the district court that Zander began "earning" less than 80% of his pre-disability compensation only when his income fell below 80%, i.e., after the effective date of the Continental policy on February 1, 1997. This makes sense and would appear to answer the question. But Continental would prefer a second definition to support its theory. This definition holds that to "earn" is "to come to be duly worthy or entitled to as a remuneration for work or services." *Id.* Construing earning this way, if, as of December 1996, Zander's disability caused him to work less, thus "entitling" him to less compensation in the future, the reduced earnings that he ultimately received in January 1998 would have been established in December 1996 – before Continental's policy was in effect. Again, documentation proving (or disproving) this unusual deferred payment arrangement is essential, but neither party bothered to memorialize it in the record.

This is not an issue that we need resolve on appeal, nor is it a question of fact that requires us to remand the case to the district court. As noted, this deferred payment theory fails because it has no foundation in the record. And even if we were to assume *arguendo* that Continental's explanation of Zander's compensation were correct, we would still be required to affirm the district court.

This is so because, at most, Continental has established that the contract was ambiguous as to when earnings were accrued and when they were paid. Because we must resolve ambiguities in favor of the insured, we hold that Zander's disability did not cause him to begin earning less than 80% per month of his pre-disability earnings after the effective date of February 1, 1997, when his earnings, construed under the policy as being synonymous with income received, dropped. We affirm the district court's grant of summary judgment on that basis.

We also affirm judgment on the basis of the district court's alternate ground, that Zander was entitled to coverage under the Guarantee. As Continental admits, under the Guarantee it agreed to provide "coverage for disabilities occurring from pre-existing conditions that [arose] after the coverage" began. We have held that Continental admitted that Zander suffered from a pre-existing condition, and that this condition did not qualify as a disability until Zander's earnings/income fell below 80% of his pre-disability level after Continental's effective date of February 1, 1997. Zander thus met both predicates for coverage under the Guarantee, and the district court was correct in granting summary judgment to Zander on that basis.

### III.

Under the terms of Continental's insurance policy, Zander was entitled to partial disability benefits if he became disabled and, because of that disability, began earning less than 80% per month of his pre-disability earnings after February 1, 1997. The district court correctly held that Continental admitted that Zander was disabled, and it correctly held as a matter of law that this disability did not cause him to begin earning less than 80% per month of his pre-disability earnings until after February 1, 1997. We therefore affirm.